**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

**EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION,**                :
                                                                       :      Case No. 4:23-cv-00694-RK
             Plaintiff,                                    :
                                                                       :
and                                                             :
                                                                       :
**BRYAN BANKS,**                                    :
                                                                       :
             Intervenor Plaintiff,                   :
                                                                       :
v.                                                                  :
                                                                       :
**SUN CHEMICAL CORPORATION,**         :
                                                                       :
             Defendant.                                 :

**DEFENDANT SUN CHEMICAL CORPORATION'S SUGGESTIONS**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.  LR 56.1 STATEMENT OF UNCONTROVERTED MATERIAL FACTS .........................................1

    **A.**  Claims at Issue...................................................................................................................1

    **B.**  Mr. Banks' Employment with Sun Chemical...........................................................1

    **C.**  October 2019 Incident and Sun Chemical's Timely Remedial Action .....................2

    **D.**  Mr. Banks' EEOC Charge and Present Lawsuit......................................................4

II.  SUMMARY JUDGMENT STANDARD ........................................................................5

III. LEGAL ARGUMENT ..............................................................................6

    **A.**  Plaintiffs' Title VII Race Discrimination Claim Fails as a Matter of Law. .............7

    **B.**  The Company had Legitimate, Nondiscriminatory Reasons for Any and All Actions Taken With Respect To Mr. Banks. ......................................11

    **C.**  Sun Chemical is Entitled to Summary Judgment and Dismissal of Plaintiffs' Retaliation Claim. ......................................12

    **D.**  There Is No Evidence of Racial Harassment Or Hostile Work Environment. .......14

    **E.**  Plaintiffs Cannot Show Pretext. .............................................18

IV. CONCLUSION......................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarez v. Des Moines Bolt Supply, Inc.*,
    626 F.3d 410 (8th Cir. 2010) .............................................................................18

*Anderson v. Durham D & M, L.L.C.*,
    606 F.3d 513 (8th Cir. 2010) ........................................................................14, 15

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .......................................................................................6

*Arraleh v. County of Ramsey*,
    461 F.3d 967 (8th Cir.2006) .............................................................................15

*Barber v. C1 Truck Driver Training, LLC*,
    656 F.3d 782 (8th Cir. 2011) .............................................................................6

*Barrett v. Omaha Nat. Bank*,
    726 F.2d 424 (8th Cir. 1984) ...........................................................................18

*Bishop v. Tyson Foods, Inc.*,
    660 F. Supp. 2d 1004 (W.D. Ark. 2009),
    *aff'd*, 373 F. App'x 649 (8th Cir. 2010)...........................................................17

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006)..........................................................................................13

*Carter v. Atrium Hosp.*,
    997 F.3d 803 (8th Cir. 2021) ...........................................................................14

*Davis v. Tri–State Mack Distributors, Inc.*,
    981 F.2d 340 (8th Cir.1992) ............................................................................18

*Donathan v. Oakley Grain, Inc.*,
    861 F.3d 735 (8th Cir. 2017) ...........................................................................13

*Edwards v. Hiland Roberts Dairy, Co.*,
    860 F.3d 1121 (8th Cir. 2017) .........................................................................19

*Elnashar v. Speedway SuperAmerica*,
    LLC, 484 F.3d 1046 (8th Cir. 2007)...................................................................9

*Engel v. Rapid City Sch. Dist.*,
    506 F.3d 1118 (8th Cir. 2007) .........................................................................18

Case 4:23-cv-00694-RK    Document 52    Filed 07/12/24    Page 3 of 26

*Fercello v. Cnty. of Ramsey*,
    612 F.3d 1069 (8th Cir. 2010) ...................................................................................12, 13, 19

*Goodman v. Performance Contractors, Inc.*,
    363 F. Supp. 3d 946 (N.D. Iowa 2019)...................................................................................20

*Higgins v. Gonzales*,
    481 F.3d 578 (8th Cir. 2007), *abrogated on other grounds by Torgerson v.*
    *City of Rochester*, 643 F.3d 1031 (8th Cir. 2011)...................................................................14

*Holloway v. Pigman*,
    884 F.2d 365 (8th Cir. 1989) ...................................................................................................6

*Hutton v. Maynard*,
    812 F.3d 679 (8th Cir. 2016) .................................................................................................12

*Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*,
    728 F.3d 800 (8th Cir. 2013) ...................................................................................................9

*Johnson v. Westinghouse Air Brake Techs. Corp.*,
    No. 22-00560-CV-W-GAF, 2023 WL 6037434 (W.D. Mo. Aug. 8, 2023),
    *aff'd*, 104 F.4th 674 (8th Cir. 2024) .....................................................................................20

*Kiel v. Select Artificials, Inc.*,
    169 F.3d 1131 (8th Cir. 1999) ...............................................................................................20

*Lake v. Yellow Transp., Inc.*,
    596 F.3d 871 (8th Cir. 2010) .................................................................................................19

*Lewis v. Sw. Bell Tel. Co.*,
    No. 20-cv-03373-SRB, 2022 WL 891630 (W.D. Mo. Mar. 25, 2022)...................................20

*Lors v. Dean*,
    595 F.3d 831 (8th Cir. 2010) .................................................................................................18

*Ludwig v. Nw. Airlines, Inc.*,
    98 F. Supp. 2d 1057 (D. Minn. 2000), *aff'd*, 1 F. App'x 558 (8th Cir. 2001) .........................10

*Mathews v. Wal-Mart Assocs., Inc.*,
    No. 2:20-CV-04033-NKL, 2020 WL 2332141 (W.D. Mo. May 11, 2020) .......................9, 15

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973).........................................................................................................7, 12

*McNeil v. Metro*,
    748 F. Supp. 2d 1047 (E.D. Mo. 2010)............................................................................11, 19

*Morris v. City of Chillicothe*,
512 F.3d 1013 (8th Cir. 2008) .................................................................. 19

*Norman v. Union Pac. R.R. Co.*,
606 F.3d 455 (8th Cir. 2010) ..................................................................... 7

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75 (1998) ............................................................................... 9, 14

*Powell v. Yellow Book USA, Inc.*,
445 F.3d 1074 (8th Cir. 2006) ................................................................. 9

*Reed v. Rolla 31 Pub. Sch. Dist.*,
374 F. Supp. 2d 787 (E.D. Mo. 2005) ...................................................... 6

*Smith v. Gen. Motors*,
No. 4:20-CV-562-MTS, 2023 WL 1765207 (E.D. Mo. Feb. 3, 2023) ..................... 9

*Stuart v. Gen. Motors Corp.*,
217 F.3d 621 (8th Cir. 2000) ................................................................... 20

*Torgerson v. City of Rochester*,
643 F.3d 1031 (8th Cir. 2011) ............................................................. 6, 14

*Twymon v. Wells Fargo & Co.*,
462 F.3d 925 (8th Cir. 2006) ................................................................... 12

*Walker v. Wayne Cnty., Iowa*,
850 F.2d 433 (8th Cir. 1988) ................................................................... 17

*Watson v. Wilkie*,
No. 4:17-00192-CV-RK, 2019 WL 3358560 (W.D. Mo. July 24, 2019), *aff'd
sub nom. Watson v. McDonough*, 996 F.3d 850 (8th Cir. 2021) ........................... 15

*Woods v. Cir. Attorney's Off. of City of St. Louis*,
No. 4:19-CV-01401-SRC, 2020 WL 4334947 (E.D. Mo. July 28, 2020), *aff'd
sub nom.* 857 F. App'x 879 (8th Cir. 2021) ........................................... 12, 18, 19

**Other Authorities**

Fed. R. Civ. P. 56(a) & (c) ......................................................................... 5-6

LR 56.1 ......................................................................................................... 1

# I. LR 56.1 STATEMENT OF UNCONTROVERTED MATERIAL FACTS

Sun Chemical Corporation ("Sun Chemical" or the "Company"), provides the following statement of uncontroverted and decisive facts under Local Rule 56.1 in support of its Motion for Summary Judgment on all claims of the Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") and Bryan Banks ("Intervenor Plaintiff" or "Banks") (collectively the "Plaintiffs"):

## A. Claims at Issue

1. Plaintiffs assert two causes of action for discrimination and retaliation under Title VII, based on a single incident involving Mr. Banks. (DN 1, Complaint ("Compl. ") at ¶¶ 28-31, 33-36.); (DN 23, Complaint of Intervenor Plaintiff ("Intervenor Compl. ") at ¶¶ 29-32, 34-37.)

2. Plaintiffs claim that in October 2019, shortly after his hire, Mr. Banks made a complaint to Sun Chemical alleging that during an incident with a co-worker, Ricardo Nevarez, Mr. Nevarez cursed at Mr. Banks and called him the "N" word (the "October 2019 Incident"). (Compl. at ¶¶ 16-18; Intervenor Compl. at ¶¶ 17-19.)

3. Plaintiffs assert that Mr. Banks was discriminated against and retaliated against when he was counseled by Sun Chemical for his aggressive conduct and use of profanity in a threatening manner against Mr. Nevarez during the October 2019 incident. (Compl. at ¶¶ 19, 25; Intervenor Compl. at ¶¶ 20, 26.)

4. Plaintiffs also appear to claim that Mr. Banks was subjected to a racially hostile work environment, and that Sun Chemical failed to take remedial action against Mr. Nevarez concerning the October 2019 incident. (Compl. at ¶ 28; Intervenor Compl. at ¶ 29.)

## B. Mr. Banks' Employment with Sun Chemical

5. Mr. Banks was hired by Sun Chemical on October 21, 2019, as a production technician at the Company's site in Kansas City, Missouri ("Kansas City site"), where he remains

1

employed in the same position. (Exhibit 1, Deposition excerpts of Bryan Banks ("Banks Dep."), at 26-29, 33; Compl. at ¶¶ 14, 26; Intervenor Compl. at ¶¶ 15, 27.)

6.      Banks first reported to Susan Cornelsen, the plant manager who hired Mr. Banks. (Banks Dep. 27-28, 33.)

7.      Ms. Cornelsen was employed by Sun Chemical from 1981 until August 2020, when she retired as the plant manager of the Kansas City site. (Exhibit 2, Deposition excerpts of Susan Cornelsen ("Cornelsen Dep."), at 8, 11-12.)

8.      Edward Jones became the plant manager of the Kansas City site upon Ms. Cornelsen's retirement. (Banks Dep. 34.)

9.      Mr. Banks has not been fired, demoted, or had his employment impacted in any negative way during his employment at Sun Chemical. (Banks Dep. 60.)

**C.      October 2019 Incident and Sun Chemical's Timely Remedial Action**

10.      On October 24, 2019, Mr. Banks made a complaint to Ms. Cornelsen alleging that a co-worker, Ricardo Nevarez, cursed at Mr. Banks and called him the "N" word (the "October 2019 Incident"). (Compl. at ¶¶ 16-18; Intervenor Compl. at ¶¶ 17-19; Banks Dep. 48.)

11.      Mr. Nevarez is Hispanic; Mr. Banks is African-American. (Banks Dep. 54; Compl. at ¶ 15.)

12.      After Mr. Banks complained of the alleged incident, Ms. Cornelsen notified Human Resources Representative Antonella Warren, who began an investigation the same day. (Cornelsen Dep. 54-55; Exhibit 3, Ms. Warren's investigation notes).

13.      Ms. Warren spoke to numerous witnesses, who confirmed there was a heated exchange between Mr. Banks and Mr. Nevarez but differed as to how it started. (Exhibit 3; Exhibit 4, Deposition excerpts of Antonella Warren ("Warren Dep."), at 19.)

14.     Mr. Banks and one witness told Ms. Warren that Mr. Nevarez used the "N" word during the incident between him and Mr. Banks, but several other witnesses stated that he did not. (Exhibit 3; Warren Dep. 19.)

15.     Mr. Nevarez admitted cursing at Mr. Banks, but adamantly denied calling him the "N" word. (Exhibit 3).

16.     Despite these differing witness accounts, Ms. Warren and Ms. Cornelsen issued a final written warning to Mr. Nevarez on November 7, 2019, and suspended him without pay for five (5) days. (Exhibit 5, Final Written Warning Notice issued to Mr. Nevarez).

17.     Mr. Nevarez then experienced significant health issues, was on a leave of absence, and has since passed away. (Banks Dep. 56.)

18.     Ms. Warren also learned from her investigation that Mr. Banks acted aggressively towards Mr. Nevarez during this incident and may have threatened him. (Warren Dep. 31-32.)

19.     As a result of the Company's investigation into the October 2019 incident, Mr. Banks was given a first warning by Ms. Cornelsen (but no discipline) due to his escalation of the matter. (Exhibit 6, Written Warning Notice issued to Mr. Banks; Warren Dep. 27, 30-31.)

20.     Mr. Banks was counseled that he should have walked away from the incident and should notify a supervisor instead of escalating the dispute with Mr. Nevarez. (Exhibit 6; Warren Dep. 27; Banks Dep. 57.)

21.     Mr. Banks was not suspended or otherwise disciplined, the counseling was a warning only, and his employment was not affected in any way. (Exhibit 6; Banks Dep. 59-60.)

22.     The warning Mr. Banks received noted that the Company "has taken appropriate action" against Mr. Nevarez. (Exhibit 4.)

23. Ms. Cornelsen, the individual issuing the counseling to Mr. Banks, was also involved in the decision to hire Mr. Banks, thus negating any discriminatory or retaliatory animus on her part. (Exhibit 6; Banks Dep. 27-28, 33.)

24. The discipline of Mr. Nevarez ended any misconduct toward Mr. Banks by Mr. Nevarez. (Banks Dep. 56, 62, 64-65, 95.)

25. The Company has no evidence that Mr. Nevarez allegedly directed the "N" word toward anyone else at the Kansas City site and Mr. Banks testified that he has never heard Mr. Nevarez use the "N" word outside of its alleged use during the October 2019 incident. (Banks Dep. 56, 62, 64-65, 95; Exhibit 7, Declaration of Edward Jones; Exhibit 8, Sun Chemical's Response to EEOC's Requests for Information).

26. Neither Ms. Cornelsen nor the current plant manager, Edward Jones, are aware of any other time that Mr. Nevarez directed the "N" word at anyone at its Kansas City facility. (Cornelsen Dep. 50; Exhibit 7).

27. Mr. Banks has not made any complaints to the current plant manager, Mr. Jones, about Mr. Nevarez, or any complaints relating to race discrimination or retaliation. (Exhibit 7).

**D.    Mr. Banks' EEOC Charge and Present Lawsuit**

28. Nevertheless, Mr. Banks filed an EEOC Charge dated May 10, 2020, alleging race discrimination and retaliation based on the October 2019 incident and counseling he received. (Exhibit 9, EEOC Charge filed by Banks).

29. Mr. Banks alleged that Mr. Nevarez used the "N" word before and that he harassed African-American employees. (*Id*.)

30. The EEOC Charge inaccurately asserted that Mr. Nevarez "told another employee" to tell "that 'N' word" that nothing happened to him and, instead, Mr. Banks was written up. (*Id*.)

31.     Contrary to Plaintiffs' allegation in the Charge, the undisputed evidence shows that Mr. Nevarez *was* disciplined as a result of the October 2019 incident in that he was suspended for five (5) days, without pay, and issued a final written warning. (Exhibit 5).

32.     Mr. Banks received only a warning and counseling.(Exhibit 6).

33.     After Sun Chemical submitted a Statement of Position and responded to the EEOC's Requests for Information denying the allegations in the Charge, the EEOC issued a finding on September 29, 2022, that Sun Chemical violated Title VII for allegedly failing "to take prompt remedial action against [Mr. Nevarez who] repeatedly used the "N" word in the workplace" and that Mr. Banks was discriminated against because of his race and color . . . and subject to retaliation when he was disciplined for his complaint of harassment." (Exhibit 10, Determination Letter).

34.     On October 14, 2022, Sun Chemical submitted a Request for Reconsideration to the EEOC, which was denied. (Exhibit 11, Request for Reconsideration).

35.     Sun Chemical made clear to the EEOC that the Company is unaware of Mr. Nevarez directing the "N" word at any other employee either before or after the incident with Mr. Banks, and that Mr. Banks (or any other employee) never reported that Mr. Nevarez had directed the word toward anyone else. (Exhibit 8, Sun Chemical's Response to EEOC's Requests for Information).

36.     The EEOC then brought this lawsuit against Sun Chemical even though Mr. Nevarez was disciplined (Exhibit 5); Mr. Banks remains employed at Sun Chemical (Compl. at ¶ 26.); and Mr. Banks had no other complaints relating to Mr. Nevarez after Mr. Nevarez was disciplined. (Banks Dep. 56, 62, 64-65, 95.)

37.     Mr. Banks joined the lawsuit as the Intervenor Plaintiff. (*See* Intervenor Compl.)

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, discovery, and sworn testimony show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a) & (c). Not every issue of fact or conflicting inference presents a genuine issue of material fact. *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The facts presented must also be in the form of admissible evidence a jury could rely on. *Reed v. Rolla 31 Pub. Sch. Dist.*, 374 F. Supp. 2d 787, 806 (E.D. Mo. 2005) ("[H]earsay is not admissible in summary judgment proceedings").

To avoid summary judgment, "the nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011)(citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)(citations omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. at 249-50, 252. Here, Plaintiffs have not even shown a scintilla of evidence in support of their position. As evidenced by Banks' own deposition testimony, the testimony of Ms. Warren, Ms. Cornelsen, and numerous other current and former employees at the Kansas City site, and the documentation submitted in support of this Motion, there are no genuine issues of material fact. Accordingly, Sun Chemical is entitled to summary judgment on all claims as a matter of law.

## III.    LEGAL ARGUMENT

Plaintiffs' claims for race discrimination and retaliation are based on a single alleged incident of harassment by a co-worker. (Compl. at ¶¶ 19, 25; Intervenor Compl. at ¶¶ 17-20, 26, 28, 30, 34-37.) Plaintiffs assert that Mr. Banks was discriminated and retaliated against when he was counseled about his aggressive conduct during the October 2019 incident with Mr. Nevarez.

(*Id.*) Plaintiffs also appear to claim that Mr. Banks was subjected to a racially hostile work environment, and that Sun Chemical failed to take appropriate remedial action against Mr. Nevarez. (Compl. at ¶ 28; Intervenor Compl. at ¶ 29.) These claims fail as a matter of law because the undisputed evidence shows that the Company promptly investigated Mr. Banks' complaint and took prompt and effective remedial action against Mr. Nevarez. (Exhibits 3 & 5).

The Company clearly addressed Mr. Nevarez's misconduct when it imposed disciplinary action by suspending him for five (5) days and issuing him a final written warning. (Exhibit 5). Mr. Banks, on the other hand, was only counseled (without discipline), to address his aggressive conduct during the incident with Mr. Nevarez. (Exhibit 6; Warren Dep. 27, 30-31.) Significantly, the warning given to Mr. Banks was not an adverse employment action as a matter of law, but rather, was the result of a legitimate, non-discriminatory, business-related reason. Sun Chemical could not overlook Mr. Banks' behavior, confirmed in the investigation, simply because Mr. Nevarez also engaged in inappropriate behavior.

Plaintiffs do not offer any evidence of discriminatory or retaliatory animus whatsoever by the Company because no such evidence exists. There is also no evidence corroborating Plaintiffs' assertion that the "N" word was regularly used and directed at employees at Sun Chemical.

### A.    Plaintiffs' Title VII Race Discrimination Claim Fails as a Matter of Law.

Plaintiffs' race discrimination claim must be analyzed pursuant to the *McDonnell Douglas*[1] framework because Plaintiffs have presented no direct evidence of discrimination. *Norman v. Union Pac. R.R. Co.,* 606 F.3d 455, 460 (8th Cir. 2010). Therefore, to state a claim for race discrimination under Title VII, Plaintiffs must prove that Mr. Banks: 1) is a member of a protected class; 2) was meeting the employer's legitimate job expectations; 3) suffered an adverse

---

[1] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

employment action; and 4) was treated differently than similarly-situated employees who are not members of his protected class. *Id.* at 461 (*citing Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir.2005)). Not only did Mr. Banks fail to meet the Company's legitimate job expectations when he chose to escalate the incident with Mr. Nevarez, but Plaintiffs also cannot establish the third or fourth elements of their *prima facie* case.

### 1. Mr. Banks' Warning and Counseling Do Not Constitute An Adverse Employment Action as a Matter of Law.

It is true that when Mr. Banks' escalation of the incident with Mr. Nevarez was discovered, Mr. Banks was counseled concerning his behavior. The Company certainly could not and *should not* have ignored Banks' aggressive and threatening conduct. Indeed, Ms. Warren's investigation revealed that Mr. Banks was "threatening to go out in the parking lot, [to] mess him [Mr. Nevarez] up" and that "[t]hey were both getting in each other's face and puffing their chests." (Warren Dep. 28-29.) Accordingly, it was appropriate for the Company to address Mr. Banks' conduct, but there was no adverse employment action taken against him. Ms. Warren testified that: "[i]t was not really discipline. [Rather,] [i]t was just a verbal warning coaching him on making sure he understands that if an altercation of that kind were to happen again, the best course of action would [] be to [not] interact at all and to simply walk away and go to site management to report the incident." (*Id.* at 27.) At most, Banks was coached that "the best course of action in this situation where someone comes at you like that is to step back, walk away… and go get your site manager so that they can handle the incident." (*Id.* at 29.)

Moreover, nothing changed concerning Mr. Banks' employment because of the coaching he received for his handling of the situation. He specifically admitted that he was not suspended as a result of this coaching, and that his schedule and his pay were not adversely affected. (Banks Dep. 59-60.) Mr. Banks confirmed that he has continued to receive pay raises "every March since"

8

the coaching and that his job duties have "remained the same." (*Id.* at 34, 37.) "Even accepting [the Plaintiffs'] allegations as true, negative evaluations or discipline, when unaccompanied by a material change in status or benefits, are insufficient to constitute an adverse employment action." *Mathews v. Wal-Mart Assocs., Inc.*, No. 2:20-CV-04033-NKL, 2020 WL 2332141, at *4 (W.D. Mo. May 11, 2020) (*citing Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 805 (8th Cir. 2013); *Elnashar v. Speedway SuperAmerica*, LLC, 484 F.3d 1046, 1058 (8th Cir. 2007) ("A reprimand is an adverse employment action only when the employer uses it as a basis for changing the terms or conditions of the employee's job for the worse."). The Complaint contains no allegation that Mr. Banks suffered any "material change in status or benefits," because no such changes occurred and his employment was unaffected in any way by the coaching.

Claims under Title VII, Section 703(a)(1) are limited to employment actions that are materially adverse to an employee. The materially adverse requirement plays a critical role in ensuring that Title VII does not become "a general civility code" for the workplace. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). "[F]ormal criticisms or reprimands that do not lead to a change in compensation, responsibilities, or other benefits do not constitute an adverse employment action." *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006) (finding no material change in employment where employee received three written reprimands, but there was no corresponding decrease in pay, hours, or any other significant change); *Smith v. Gen. Motors*, No. 4:20-CV-562-MTS, 2023 WL 1765207, at *6 (E.D. Mo. Feb. 3, 2023); *Jackman,* 728 F.3d at 804. Courts have noted that "[h]olding that "coaching," when warranted, constitutes an adverse employment action would emasculate employers and dissuade them from not only discussing legitimate performance concerns with their employees, but also from helping their employees perform better in the future. The Court will not impose such a

sweeping limitation on employers." *Ludwig v. Nw. Airlines, Inc.,* 98 F. Supp. 2d 1057, 1070 (D. Minn. 2000), *aff'd*, 1 F. App'x 558 (8th Cir. 2001). Here, there is no evidence that the warning Mr. Banks received "produced a material employment disadvantage" nor any disadvantage at all, and thus Plaintiffs' discrimination and retaliation claims fail as a matter of law.

> **2.    Plaintiffs Have No Evidence of Comparators Who Were Treated More Favorably than Mr. Banks.**

In addition, Plaintiffs cannot identify any employee outside of Mr. Banks' protected class who was treated more favorably. First, Plaintiffs cannot point to any employee who engaged in the same conduct as Mr. Banks and yet failed to receive a warning for that conduct. Second, although the Complaint vaguely alleges that supervisory employees of Sun Chemical tolerated and "were aware of employees other than Banks using profanity against employees in the workplace on multiple occasions at the Kansas City Facility but did not issue Written Warning Notices (or more severe disciplinary actions) to those employees for that behavior," these allegations are purely speculative and contradicted by the record, and the fact that the site manager was the only "supervisor" at the site. (Compl. ¶¶ 23-24; Exhibit 7 at ¶ 3). Moreover, Plaintiffs' characterization of the issue with Mr. Banks' conduct merely being the use of profanity is a gross mischaracterization of Mr. Banks' conduct.  The Company was not merely concerned with the use of profanity; rather, the Company was concerned that Mr. Banks failed to walk away and seek intervention from management, and instead escalated the incident with Mr. Nevarez with aggressive and threatening conduct that included the use of profanity directed toward Mr. Nevarez. (Exhibit 6; Warren Dep. 27; Banks Dep. 57.)

Even assuming, *arguendo*, the focus was profanity, there is no evidence that Sun Chemical ignored its use from others.  For example, former employee Joseph Stahl testified that the use of profanity at the plant was "not real common" and he never observed coworkers swearing "in

earshot of one of the supervisors." (Exhibit 12, Deposition excerpts of Joseph Stahl ("Stahl Dep."), at 15:13-22, 16:2-5.) Mr. Banks testified that there was only one instance of another employee cursing, when former employee Kristopher Savage called another employee a "son of a b*tch," but that Mr. Banks had no real or personal knowledge of whether a supervisor was present, whether anyone complained about that incident, or how Human Resources handled it. (Banks Dep. 60-62.) This alleged hearsay is insufficient to survive summary judgment. *McNeil v. Metro*, 748 F. Supp. 2d 1047, 1054 (E.D. Mo. 2010).

### B. The Company had Legitimate, Nondiscriminatory Reasons for Any and All Actions Taken With Respect To Mr. Banks.

Even if Plaintiffs could establish a *prima facie* case of race discrimination (or retaliation), which they cannot, their claims will still fail as a matter of law because Sun Chemical can provide a legitimate, nondiscriminatory reason for Mr. Banks' counseling – his aggressive and threatening conduct as described above. Although Mr. Banks clearly should not have been called the "N" word by a co-worker (and again, the Company could not definitely conclude that is what occurred), Mr. Banks should not have acted aggressively towards his co-worker.[2] The Company is not maintaining that Mr. Banks and Mr. Nevarez acted equivalently. Mr. Nevarez's alleged actions were worse, which is why he was disciplined and suspended (and Mr. Banks was not). However, that does not mean that Mr. Banks' conduct was acceptable, and it certainly does not mean the Company cannot direct an employee to refrain from escalating disagreements in the future. (Warren Dep. 28:19-29:12.)

Simply put, the Company does not lose its right to administer its policies or to instruct its employees not to engage in heated arguments at the workplace. "Violation of company policy is a

---

[2] There is no evidence that the "N" word was directed toward Mr. Banks until the argument had progressed from the break room into the locker room – and well after Mr. Banks escalated the situation with Mr. Nevarez. (Exhibit 3).

legitimate, non-discriminatory reason [to address an employee's behavior]." *Woods v. Cir. Attorney's Off. of City of St. Louis*, No. 4:19-CV-01401-SRC, 2020 WL 4334947, at *7 (E.D. Mo. July 28, 2020), *aff'd sub nom.* 857 F. App'x 879 (8th Cir. 2021) (holding that "Defendants have articulated at least two legitimate, non-discriminatory reasons" for the adverse action in question including "using profanity … and yelling[] during their verbal confrontation."); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006). Mr. Banks admitted that he was aware his conduct violated Company policy. (Banks Dep. 32.) Even then, he was not disciplined; rather, he was issued a warning and counseled for his failure to walk away from conflict. (Warren Dep. 28-30.)

**C.    Sun Chemical is Entitled to Summary Judgment and Dismissal of Plaintiffs' Retaliation Claim.**

Plaintiffs' retaliation claim must also fail as a matter of law because no adverse action was taken against Mr. Banks (as described above), and Plaintiffs cannot establish the required causal connection. "To survive a motion for summary judgment on a retaliation claim, [a plaintiff] must offer direct evidence of retaliation or create an inference of retaliation under the *McDonnell Douglas* burden-shifting framework." *Hutton v. Maynard*, 812 F.3d 679, 683 (8th Cir. 2016). Because there is no direct evidence in this case, to state a claim for retaliation under Title VII, Plaintiffs must prove that: 1) Mr. Banks "engaged in protected conduct; (2) []he suffered materially adverse employment action, action that would deter a reasonable employee from making a charge of employment discrimination or harassment; and (3) the materially adverse action was causally linked to the protected conduct." *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077–78 (8th Cir. 2010) (*citing Weger v. City of Ladue,* 500 F.3d 710, 726 (8th Cir.2007)). Title VII's retaliation provision requires a showing that "a reasonable employee would have found the challenged action materially adverse" and Title VII does not "provide redress for those petty slights or minor annoyances that often take place at work and that all employees experience."

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "The plaintiff's ultimate burden in a Title VII retaliation case is to prove an impermissible retaliatory motive was the 'but-for cause' of the adverse employment action." *Donathan v. Oakley Grain, Inc*., 861 F.3d 735, 739–40 (8th Cir. 2017)(*citing Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013)).

The apparent basis for Plaintiffs' retaliation claim – that Mr. Banks complained about the October 2019 incident and as a result was "issued a Written Warning Notice" — is not sufficient to sustain a claim of retaliation as a matter of law. (Intervenor Compl. ¶ 26.); *Fercello*, 612 F.3d at 1079 (holding that an action is not "materially adverse" when there were "no negative consequences"). Mr. Banks confirmed that the coaching was not an adverse employment action, as his employment was not negatively affected by it in any way. (Banks Dep. 34, 37, 59-60, 76.)

At most, Plaintiffs are alleging that Mr. Banks "became afraid to complain to his supervisors and managers at Sun Chemical about anything, including racial harassment or discrimination, due to fear of immediate reprisal." (Compl. ¶ 25.) This allegation is utterly self-serving and unsupported by the record. Plaintiffs do not describe what this alleged racial harassment or discrimination is, and Sun Chemical has absolutely no record of any reports of alleged discriminatory/harassing, or retaliatory conduct other than the October 2019 incident. (Exhibits 7 & 8). Additionally, Mr. Banks' supervisor, the site manager, has since changed from Ms. Cornelsen, to whom he complained in October 2019, to the current site manager Mr. Jones, to whom Mr. Banks has not complained at all. (Banks Dep. 34; Exhibit 7). Mr. Jones was not involved in the November 2019 coaching to Mr. Banks, as he became the site manager in August 2020. (Exhibit 7). Mr. Banks also has the option of making reports using the Company's Ethics Line, which can be done anonymously; he did not do so. (Exhibit 7, at ¶ 12-13). Finally, Mr. Banks admitted that he had not suffered any discriminatory or harassing conduct at Sun Chemical

since the October 2019 incident with Mr. Nevarez, precluding any *need* to make a complaint. (Banks Dep. 56, 64-65.)

Thus, Mr. Banks cannot reasonably fear reprisal from Mr. Jones (or the Company as a whole) as a result of the coaching, and this allegation similarly fails as a matter of law. *Higgins v. Gonzales*, 481 F.3d 578, 590 (8th Cir. 2007), *abrogated on other grounds by Torgerson*, 643 F.3d 1031 (Plaintiff must show that "retaliatory actions were materially adverse such that a reasonable employee in her situation would have been dissuaded from complaining about discrimination.").

### D. There Is No Evidence of Racial Harassment Or Hostile Work Environment.

It is unclear if Plaintiffs are asserting a claim of racial harassment and/or hostile work environment. If Plaintiffs are, in fact, asserting such a claim, they have set forth no facts in support, and this claim must also fail as a matter of law. To succeed on a claim of a racially hostile work environment, Plaintiffs must demonstrate that 1) Mr. Banks belongs to a protected group, 2) he "was subjected to unwelcome harassment," 3) "the harassment was based on a protected characteristic," and 4) "the harassment affected a term, condition, or privilege of employment." *Carter v. Atrium Hosp.*, 997 F.3d 803, 811 (8th Cir. 2021) (citation omitted); *Anderson v. Durham D & M, L.L.C.,* 606 F.3d 513, 518 (8th Cir. 2010). As explained in *Oncale,* harassing conduct by co-workers could not be said to constitute a "condition" of employment unless the conduct is sufficiently "severe or pervasive enough to create … an environment that a reasonable person would find hostile or abusive." *Oncale*, 523 U.S. at 81 (*quoting Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993)). Additionally, in cases where the alleged "harassment [was] perpetrated by a nonsupervisory employee, the plaintiff must [also] show the employer knew or should have known of the harassment and failed to take proper remedial action" that was prompt and effective.

*Carter*, 997 F.3d at 811; *Arraleh v. County of Ramsey,* 461 F.3d 967, 969 (8th Cir.2006). Plaintiffs cannot establish a *prima facie* case of Plaintiffs' hostile work environment claim.

First, the conduct in question was not severe and pervasive. It is based on a single isolated incident in October 2019 for which witness accounts differ as to whether a racial epithet was used or not. (Exhibit 3; Warren Dep. 19.) "Hostile work environment claims must meet "demanding" standards[.]" *Anderson,* 606 F.3d at 519 (citation omitted). It is well recognized that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (citation omitted). "As the Supreme Court has explained, the "very nature" of a hostile work environment claim "involves repeated conduct" that can "occur[ ] over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Mathews,* 2020 WL 2332141, at *4 (*quoting Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("[s]uch claims are based on the cumulative effect of individual acts."). "More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment." *Watson v. Wilkie,* No. 4:17-00192-CV-RK, 2019 WL 3358560, at *7 (W.D. Mo. July 24, 2019), *aff'd sub nom. Watson v. McDonough*, 996 F.3d 850 (8th Cir. 2021)(citation omitted).

The Company does not deny the offensive nature of the "N" word. However, there is conflicting evidence that this language was actually used against Mr. Banks or otherwise in the workplace (Exhibit 3; Warren Dep. 19.), but even if it was, the law is clear that "[r]acial slurs, without more, "do not render a work environment hostile as a matter of law." *Watson*, 2019 WL 3358560, at *6 (*quoting Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886, 893 (8th Cir. 2005))("Racial epithets are morally repulsive. But our cases require that a plaintiff show more than a few occurrences over a course of years").

Without any firsthand knowledge or credible evidence, Plaintiffs assert that "[p]rior to the [October 2019] Incident, Nevarez used the N-word[] in the workplace," and "supervisory employees of Sun Chemical, including Cornelsen, were aware of Nevarez using the N-word[] in the workplace, in front of other employees, on multiple occasions at the Kansas City Facility." (Compl. at ¶¶ 21-22.) However, Ms. Cornelsen never heard Mr. Nevarez use the "N" word, and there is no evidence that this word was commonly used at the Kansas City site. (Cornelsen Dep. 50:10-17.) Ms. Cornelsen further testified that she "would find hard to believe [Mr. Nevarez] using that word because he has grandchildren who are black." (*Id.* at 73:17-25.) Mr. Jones is also not aware and has never heard Mr. Nevarez (or any other employee) use the "N" word. (Exhibit 7.)

Mr. Banks himself testified that he never heard Mr. Nevarez use the "N" word outside of its alleged use during the October 2019 incident. (Banks Dep. 62, 95:8-12.) Laurence Wilhite (a former co-worker of Banks) testified that he never observed Mr. Nevarez or any other employee "using the 'N' word." (Exhibit 13, Deposition excerpts of Laurence Wilhite, at 10:23-11:1-5.) Kristopher Savage, who worked at the Kansas City site from 2009 until October 2023, never heard "any of [his] co-workers using the 'N' word." (Exhibit 14, Deposition excerpts of Kristopher Savage, at 7-8, 18:12-15.) Mr. Stahl testified that he never heard the 'N' word used in the workplace. (Stahl Dep. 14:23-15:1.) Mike Smallwood, another co-worker of Banks, testified that he (Mr. Smallwood) was told by another employee that Mr. Nevarez called them "names" and used the "N" word against Mr. Smallwood, but admitted that Mr. Nevarez "never called it directly to my [Mr. Smallwood's] face." (Exhibit 15, Deposition excerpts of Mike Smallwood ("Smallwood Dep."), at 16-18, 45, 56-57.)[3]

---

[3] Interestingly, Mr. Smallwood also testified that he and Mr. Nevarez were friends a long time ago, but that relationship broke down because he (Mr. Smallwood) thought Mr. Nevarez was "starting to get jealous of me [Smallwood] and envy, and he will just try to do things to try to piss me off." (Smallwood Dep. 16.)

Plaintiffs may assert that in Ms. Warren's investigation of the October 2019 incident, she learned of the following: 1) Joe Van Dolah relayed that Mr. Nevarez had once used the "N" word in a prior conversation with Mr. Van Dolah, (Banks Dep. 37.); and 2) Mr. Savage relayed that one time he heard Mr. Nevarez use the "N" word, "not at someone but just like if he was talking under his breath kind of thing." (Banks Dep. 40.) It is well established that such hearsay is insufficient to overcome summary judgment, and that "[w]hen ruling on a summary judgment motion, the district court may consider only the portion of the submitted materials that is admissible or useable at trial." *Walker v. Wayne Cnty., Iowa*, 850 F.2d 433, 434–35 (8th Cir. 1988) (citations omitted).

Finally, Plaintiffs' allegation that Sun Chemical "failed to take prompt or effective action to correct or remedy" a "racially hostile work environment created by Nevarez" is blatantly false and contradicted by the record. (Compl. ¶ 28; Exhibit 5). The undisputed evidence shows that the Company's response was both prompt and appropriately remedial in nature by suspending Mr. Nevarez for five (5) days and issuing a final written warning to him. (Exhibit 5). Moreover, Mr. Banks admits that he was not subjected to any other inappropriate conduct by Mr. Nevarez following his suspension. (Banks Dep. 56, 64-65; Exhibit 5). Indeed, the Company has not received any complaints about the use of inappropriate language from any other employee at the Kansas City site. (Exhibit 7). Thus, the allegation is insufficient, even taken as true, and Sun Chemical is entitled to summary judgment on Plaintiffs' race harassment or discrimination claim. *See Bishop v. Tyson Foods, Inc.,* 660 F. Supp. 2d 1004, 1019 (W.D. Ark. 2009), *aff'd*, 373 F. App'x 649 (8th Cir. 2010). In *Bishop*, the court held that summary judgment was warranted because "an investigation was conducted" after plaintiff complained about a racial epithet, the employee determined to have used the epithet was disciplined, and "never again used the "N" word in [Plaintiff's] presence." *Id.* Summary judgment is warranted in this case for the same exact reasons.

As a matter of law, the Company was not required to terminate Mr. Nevarez in response to Mr. Banks' complaint. *Davis v. Tri–State Mack Distributors, Inc.,* 981 F.2d 340, 343 (8th Cir.1992)(Title VII "does not require an employer to fire a harasser."). "Rather, what an employer must do is to take 'prompt remedial action reasonably calculated to end the harassment.'" *Id.* (citation omitted). In this case, that is exactly what happened; Mr. Nevarez was disciplined and informed that he would be subject to termination should "a similar incident occur again." (Exhibit 5). He engaged in no such further incidents, and thus the remedial action by the Company was reasonably calculated to end the alleged harassment – and indeed *did* end the alleged harassment. (Banks Dep. 56, 64-65; Exhibit 5); *Barrett v. Omaha Nat. Bank*, 726 F.2d 424, 427 (8th Cir. 1984)(noting that the "[employer] took immediate and appropriate corrective action" when it investigated the complaint, "informed [coworkers] that their conduct would not be tolerated, and told [alleged harasser] that he would be fired for any further misconduct."); *Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1125 (8th Cir. 2007) ("Proper remedial action need be only 'reasonably calculated to stop the harassment,[] and remedial action that does not end the harassment can still be adequate if it is reasonably calculated to do so.")(citation omitted); *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 421 (8th Cir. 2010) ("If an employer responds to harassment with prompt remedial action calculated to end it, then the employer is not liable for the harassment.").

E.     **Plaintiffs Cannot Show Pretext.**

Plaintiffs cannot overcome the legitimate reasons for counseling Mr. Banks and there is no evidence of discriminatory or retaliatory animus. When an employer "articulates a legitimate, nondiscriminatory reason for employment decisions," the Plaintiff must then "present sufficient evidence to show both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010) (citation omitted). A "showing of pretext requires more substantial evidence." *Woods*, 2020

WL 4334947, at *6 (*citing Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir. 2004)). The Plaintiffs bear "the burden of persuasion at all times." *McNeil*, 748 F. Supp. 2d at 1055 (citation omitted). "Absent some evidence of retaliatory motive, we will not second-guess an employer's judgment[.]" *Fercello*, 612 F.3d at 1080 (*quoting Gilbert*, 495 F.3d at 916 ("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom and fairness of the business judgments made by employers.").

"A plaintiff may show pretext, among other ways, by showing that an employer . . . treated similarly-situated employees in a disparate manner." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). "At the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1126 (8th Cir. 2017). Without any credible evidence, Plaintiffs vaguely assert that other employees have used profanity and were not disciplined. (Compl. ¶¶ 22-23.) It is important to note that Mr. Banks was counseled mainly because he did not walk away from the incident but rather continued to escalate the situation, which included the use of profanity toward Mr. Nevarez; it was not the use of profanity itself. (Warren Dep. 27, 29.) Even so, the only other employee who used profanity and acted aggressively in this manner is Mr. Nevarez. Although Mr. Nevarez is not similarly situated to Mr. Banks, he received discipline while Mr. Banks did not. (Exhibits 5 & 6).

A plaintiff may also show pretext with "evidence that an employer has proffered an explanation with no basis in fact, with evidence that the plaintiffs recently received favorable reviews, or with evidence that the employer's proffered reason for its employment decision has changed substantially over time." *Morris v. City of Chillicothe*, 512 F.3d 1013, 1019 (8th Cir. 2008). None of these factors are present in this case, as the Complaint makes no such allegations.

## IV. CONCLUSION

The paltry "evidence" of discrimination and retaliation speculated by Plaintiffs is woefully insufficient to rebut the Company's legitimate basis for counseling Mr. Banks for his part in escalating the October 2019 incident. Plaintiffs' claims cannot survive summary judgment simply because Mr. Banks happens to be African-American or because Plaintiffs may disagree with, as well as mis-characterize, the coaching he received. It is well settled that merely falling into a protected category is insufficient grounds to state a claim, and an employee's disagreement with an employer's decision is not sufficient to create an issue of fact. *Johnson v. Westinghouse Air Brake Techs. Corp*., No. 22-00560-CV-W-GAF, 2023 WL 6037434, at *10 (W.D. Mo. Aug. 8, 2023), *aff'd*, 104 F.4th 674 (8th Cir. 2024)(granting summary judgment on discrimination claims, noting that "[a] plaintiff's protected status alone does not create a triable issue."); *Lewis v. Sw. Bell Tel. Co*., No. 20-cv-03373-SRB, 2022 WL 891630, at *6 (W.D. Mo. Mar. 25, 2022) (granting summary judgment when plaintiff demonstrated nothing more than membership in protected class); *Goodman v. Performance Contractors, Inc.*, 363 F. Supp. 3d 946, 957 (N.D. Iowa 2019) (noting that "an unsupported, self-serving allegation that an employer's decision was based on retaliation cannot establish a genuine issue of material fact"); *Stuart v. Gen. Motors Corp*., 217 F.3d 621, 637 (8th Cir. 2000); *Kiel v. Select Artificials, Inc*., 169 F.3d 1131, 1136 (8th Cir. 1999).

For the reasons stated above, there is no genuine dispute as to any material fact, and Sun Chemical respectfully requests the Court grant its Motion for Summary Judgment and dismiss all of Plaintiffs' claims in their entirety with prejudice.

Respectfully submitted,

*/s/ Michael L. Blumenthal*
Michael L. Blumenthal, MO Bar #49153
SEYFERTH BLUMENTHAL & HARRIS LLC
4801 Main Street, Suite 310
Kansas City, MO  64112
Telephone:     (816) 756-0700
Facsimile:      (816) 756-3700
Email:            mike@sbhlaw.com

Mekesha Montgomery (*admitted pro hac vice)*
Irina V. Strelkova (*admitted pro hac vice*)
FROST BROWN TODD LLP
150 3rd Avenue South, Suite 1900
Nashville, Tennessee 37201
Telephone:     (615) 251-5550
Facsimile:      (615) 251-5551
Email: mmontgomery@fbtlaw.com
istrelkova@fbtlaw.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2024, a true and accurate copy of the foregoing Defendant Sun Chemical Corporation's Suggestions in Support of Its Motion for Summary Judgment was electronically filed with the Court.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Michael L. Blumenthal*
ATTORNEYS FOR DEFENDANT