IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

              Plaintiff,

    and

BRYAN BANKS,

              Intervenor-Plaintiff,

v.

SUN CHEMICAL CORPORATION,

              Defendant.

CASE NO. 4:23-cv-00694-RK

**<u>Plaintiffs' Suggestions in Opposition
to Sun Chemical's Motion for Summary Judgment</u>**

Some cases are appropriate for resolution by summary judgment because the critical facts are not meaningfully disputed, but this is not such a case. Defendant Sun Chemical has presented the Court with a statement of facts viewed in the light most unfavorable to the nonmoving parties, supported by interested witnesses, ignoring contrary documents and testimony in the evidentiary record, and asks the Court to treat them as uncontroverted. In effect, Defendant Sun Chemical is asking this Court to make credibility determinations, weigh evidence, resolve factual disputes, and draw inferences from the facts. Plaintiffs urge the Court to decline Defendant Sun Chemical's invitation to invade the province of the jury.

# Table of Contents

Table of Contents ........................................................................................................ 2

Table of Authorities ................................................................................................... 4

I.  Plaintiffs' Responses to Sun Chemical's Statement of Uncontroverted Material
    Facts ....................................................................................................................... 6

    A.  Claims at Issue ............................................................................................... 6

    B.  Mr. Banks' Employment with Sun Chemical ................................................ 11

    C.  October 2019 Incident and Sun Chemical's Timely Remedial Action .......... 12

    D.  Mr. Banks' EEOC Charge and Present Lawsuit ........................................... 25

II. Plaintiffs' Statement of Additional Material Facts ............................................ 33

    A.  Introductory Facts ........................................................................................ 33

    B.  The October 24, 2019, Incident Between Nevarez and Banks ..................... 34

    C.  Sun Chemical's Investigation of the October 2019 Incident ........................ 35

    D.  Sun Chemical's Prior Knowledge of Hostile Work Environment Created by
        Nevarez ......................................................................................................... 38

    E.  Discipline and Non-Discipline Issued to Banks by Sun Chemical in November
        2019 ............................................................................................................... 39

III. Plaintiffs' Argument Opposing Summary Judgment ....................................... 42

    A.  Introduction .................................................................................................. 42

B.  Standard of Review..................................................................... 42

C.  Sun Chemical is liable for the racially hostile work environment created by Mr. Nevarez's assault on Mr. Banks because it was negligent. ................... 43

D.  When Mr. Banks complained about Mr. Nevarez's harassment, Sun Chemical retaliated against him. ............................................................... 47

E.  Conclusion .................................................................... 53

Certificate of Service ..................................................................... 55

# Table of Authorities

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................... 42

*Blomker v. Jewell*,
831 F.3d 1051 (8th Cir. 2016) ........................................................................... 43

*Bowen v. Missouri Dep't of Soc. Servs.*,
311 F.3d 878 (8th Cir. 2002) ............................................................................. 45

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) .............................................................................................. 48

*Carter v. Chrysler Corp.*,
173 F.3d 693 (8th Cir. 1999) ............................................................................. 46

*Cerros v. Steel Techs., Inc.*,
288 F.3d 1040 (7th Cir. 2002) ........................................................................... 44

*Clay v. Credit Bureau Enters., Inc.*,
754 F.3d 535 (8th Cir. 2014) ............................................................................. 45

*Cole v. Grp. Health Plan, Inc.*,
No. 23-3050, 2024 WL 3217580 (8th Cir. June 28, 2024) ................................... 48

*Collins v. Union Pacific Railroad Co.*,
No. 23-2711, 2024 WL 3515859 (8th Cir. July 24, 2024) .................................... 48

*EEOC v. WC&M Enters.*,
493 F.3d 393 (5th Cir. 2007) ............................................................................. 44

*Fincher v. Depository Tr. & Clearing Corp.*,
604 F.3d 712 (2d Cir. 2010) ............................................................................... 44

*Hanger v. Lake Cnty.*,
390 F.3d 579 (8th Cir. 2004) ............................................................................. 42

*Kpou v. Supervalu, Inc.*,
556 F. Supp. 3d 940 (D. Minn. 2021) ................................................................ 46

*Mastio v. Wausau Serv. Corp.*,
948 F. Supp. 1396 (E.D. Mo. 1996) ................................................................... 44

*Muldrow v. City of St. Louis*,
 144 S. Ct. 967 (2024) ................................................................ 48

*Nichols v. Tri-Nat'l Logistics, Inc.*,
 809 F.3d 981 (8th Cir. 2016) .................................................... 46

*Patterson v. County of Oneida*,
 375 F.3d 206 (2nd Cir. 2004) .................................................. 45

*Reeves v. Sanderson Plumbing Products, Inc.*,
 530 U.S. 133 (2000) .................................................................. 43

*Roberson v. Hayti Police Dep't*,
 241 F.3d 992 (8th Cir. 2001) ........................................ 6, 7, 8, 10

*Singletary v. Missouri Dep't of Corr.*,
 423 F.3d 886 (8th Cir. 2005) .............................................. 43, 44

*Smith v. Allen Health Sys., Inc.*,
 302 F.3d 827 (8th Cir. 2002) .................................................... 51

*Teegarden v. Gold Crown Mgmt., LLC*,
 No. 4:18-CV-00554-SRB, 2020 WL 13682809 (W.D. Mo. Apr. 23,
 2020) ......................................................................................... 42

*Watson v. CEVA Logistics U.S., Inc.*,
 619 F.3d 936 (8th Cir. 2010) .................................................... 46

*Wilson v. Rayford*,
 No. 4:22-CV-66 PLC, 2023 WL 4419741 (E.D. Mo. July 10, 2023),
 appeal dismissed, No. 23-2825, 2023 WL 9543580 (8th Cir. Aug. 14,
 2023) ...................................................................... 6, 7, 8, 10

**Statutes**

42 U.S.C. §§ 2000e-2(a)(1) Title VII Section 703(a)(1) ............................. 10

42 U.S.C. § 2000e-3(a) ........................................................... 47-48

# I. PLAINTIFFS' RESPONSES TO SUN CHEMICAL'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS

## A. Claims at Issue

1.   **Plaintiffs assert two causes of action for discrimination and retaliation under Title VII, based on a single incident involving Mr. Banks. (DN 1, Complaint ("Compl.") at ¶¶ 28-31, 33-36.); (DN 23, Complaint of Intervenor Plaintiff ("Intervenor Compl.") at ¶¶ 29-32, 34-37.)**

**OBJECTION**: Plaintiffs object to this statement of fact because it does not meet the requirement of Fed. R. Civ. P. 56(c)(1)(A) to cite "to particular parts of materials in the record," meaning the *evidentiary* record. While "[a] plaintiff's *verified* complaint is the equivalent of an affidavit for purposes of summary judgment," *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994 (8th Cir. 2001) (emphasis added), "[a]n allegation in an *unverified* complaint does not constitute competent evidence to support a statement of fact in support of a Rule 56(c) motion for summary judgment," *Wilson v. Rayford*, No. 4:22-CV-66 PLC, 2023 WL 4419741, at *3 (E.D. Mo. July 10, 2023), appeal dismissed, No. 23-2825, 2023 WL 9543580 (8th Cir. Aug. 14, 2023) (emphasis added). Accordingly, the Court should disregard this statement of fact in its entirety.

**RESPONSE**: Controverted. While Plaintiffs do assert in their Complaints two causes of action under Title VII, one for race discrimination and one for retaliation, those claims are not based merely on a single incident involving Mr. Banks. The Plaintiffs' claims in their Complaints are based, in part, on that October 2019 incident involving Mr. Banks, but they are also based on Sun Chemical's prior actions and

inactions regarding race discrimination in the workplace, Sun Chemical's actions and inactions in response to that incident, and Sun Chemical's subsequent retaliatory actions against Mr. Banks. (Complaint, Doc. 1, ¶¶ 13-26.)

**2.** **Plaintiffs claim that in October 2019, shortly after his hire, Mr. Banks made a complaint to Sun Chemical alleging that during an incident with a co-worker, Ricardo Nevarez, Mr. Nevarez cursed at Mr. Banks and called him the "N" word (the "October 2019 Incident"). (Compl. at ¶¶ 16-18; Intervenor Compl. at ¶¶ 17-19.)**

**OBJECTION**: Plaintiffs object to this statement of fact because it does not meet the requirement of Fed. R. Civ. P. 56(c)(1)(A) to cite "to particular parts of materials in the record," meaning the *evidentiary* record. While "[a] plaintiff's *verified* complaint is the equivalent of an affidavit for purposes of summary judgment," *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994 (8th Cir. 2001) (emphasis added), "[a]n allegation in an *unverified* complaint does not constitute competent evidence to support a statement of fact in support of a Rule 56(c) motion for summary judgment," *Wilson v. Rayford*, No. 4:22-CV-66 PLC, 2023 WL 4419741, at *3 (E.D. Mo. July 10, 2023), appeal dismissed, No. 23-2825, 2023 WL 9543580 (8th Cir. Aug. 14, 2023) (emphasis added). Accordingly, the Court should disregard this statement of fact in its entirety.

**RESPONSE**: Controverted. While Plaintiffs do assert in their Complaints that Mr. Banks made a complaint to Sun Chemical about Mr. Nevarez cursing at him and calling him the "N" word, they did not assert that the October 2019 incident

occurred "shortly after his hire"; rather, Plaintiffs assert in their Complaints that Mr. Banks began working at Sun Chemical in July 2019 as a temporary production technician and became a regular production technician in October 2019. (Complaint, Doc. 1, at ¶¶ 14-18.)

**3.     Plaintiffs assert that Mr. Banks was discriminated against and retaliated against when he was counseled by Sun Chemical for his aggressive conduct and use of profanity in a threatening manner against Mr. Nevarez during the October 2019 incident. (Compl. at ¶¶ 19, 25; Intervenor Compl. at ¶¶ 20, 26.)**

**OBJECTION**: Plaintiffs object to this statement of fact because it does not meet the requirement of Fed. R. Civ. P. 56(c)(1)(A) to cite "to particular parts of materials in the record," meaning the *evidentiary* record. While "[a] plaintiff's *verified* complaint is the equivalent of an affidavit for purposes of summary judgment," *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994 (8th Cir. 2001) (emphasis added), "[a]n allegation in an *unverified* complaint does not constitute competent evidence to support a statement of fact in support of a Rule 56(c) motion for summary judgment," *Wilson v. Rayford*, No. 4:22-CV-66 PLC, 2023 WL 4419741, at *3 (E.D. Mo. July 10, 2023), appeal dismissed, No. 23-2825, 2023 WL 9543580 (8th Cir. Aug. 14, 2023) (emphasis added). Plaintiffs further object to this statement of fact because it is not supported by the cited paragraphs of the Complaints, in that they contain no allegation that Mr. Banks was counseled for "aggressive conduct" or use of profanity

"in a threatening manner." (Complaint, Doc. 1, at ¶¶ 19 and 25.) Accordingly, the Court should disregard this statement of fact in its entirety.

**RESPONSE**: Controverted. The cited paragraphs of the Complaints do not support this statement of fact. Paragraph 19/20 of the Complaints states: "On or about November 7, 2019, fourteen (14) days after Banks's Harassment Complaint, Plant Manager Cornelsen issued a Written Warning Notice to Banks for using profanity against Nevarez during the Incident; it included the statement: 'Verbal profanity is considered inappropriate behavior that will not be tolerated. Should a similar occurrence happen, you will be subject to disciplinary action.'" (Complaint, Doc. 1, at ¶ 19; Complaint of Intervenor Plaintiff Bryan Banks, Doc. 23, at ¶ 20.) Paragraph 25/26 of the Complaints states: "As a result of being issued a Written Warning Notice in response to the Incident and his Harassment Complaint, Banks became afraid to complain to his supervisors and managers at Sun Chemical about anything, including racial harassment or discrimination, due to fear of immediate reprisal." (Complaint, Doc. 1, at ¶ 25; Complaint of Intervenor Plaintiff Bryan Banks, Doc. 23, at ¶ 26.) These paragraphs in the Complaints do not say anything about Mr. Banks "being counseled" for "aggressive conduct" or using profanity "in a threatening manner." The meaning of the "Written Warning Notice" issued by Sun Chemical to Mr. Banks is a material fact in this case, but one that remains in dispute.

**4.    Plaintiffs also appear to claim that Mr. Banks was subjected to a racially hostile work environment, and that Sun Chemical failed to take**

remedial action against Mr. Nevarez concerning the October 2019 incident. (Compl. at ¶ 28; Intervenor Compl. at ¶ 29.)

**OBJECTION**: Plaintiffs object to this statement of fact because it does not meet the requirement of Fed. R. Civ. P. 56(c)(1)(A) to cite "to particular parts of materials in the record," meaning the *evidentiary* record. While "[a] plaintiff's *verified* complaint is the equivalent of an affidavit for purposes of summary judgment," *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994 (8th Cir. 2001) (emphasis added), "[a]n allegation in an *unverified* complaint does not constitute competent evidence to support a statement of fact in support of a Rule 56(c) motion for summary judgment," *Wilson v. Rayford*, No. 4:22-CV-66 PLC, 2023 WL 4419741, at *3 (E.D. Mo. July 10, 2023), appeal dismissed, No. 23-2825, 2023 WL 9543580 (8th Cir. Aug. 14, 2023) (emphasis added). Accordingly, the Court should disregard this statement of fact in its entirety.

**RESPONSE**: Controverted. This statement of fact is an incomplete and inaccurate summary of paragraph 28/29 of the Complaints, which reads: "Sun Chemical discriminated against Banks with respect to the terms, conditions, and privileges of employment because of his race, African American, in that Sun Chemical knew or should have known of the racially hostile work environment created by Nevarez, failed to take prompt or effective action to correct or remedy it, and failed to prevent Banks from being subjected to it, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §§ 2000e-2(a)(1)." (Complaint, Doc. 1, at ¶ 28; Complaint of Intervenor Plaintiff Bryan Banks, Doc. 23, at ¶ 29.)

## B. Mr. Banks' Employment with Sun Chemical

5.     **Mr. Banks was hired by Sun Chemical on October 21, 2019, as a production technician at the Company's site in Kansas City, Missouri ("Kansas City site"), where he remains employed in the same position. (Exhibit 1, Deposition excerpts of Bryan Banks ("Banks Dep."), at 26-29, 33; Compl. at ¶¶ 14, 26; Intervenor Compl. at ¶¶ 15, 27.)**

RESPONSE: Controverted as incomplete. In the summer of 2019, Mr. Banks began working at Sun Chemical's Kansas City Facility, through a staffing company, as a temporary production technician; then, in September 2019, Sun Chemical asked Mr. Banks to continue in the same production technician position full-time, and his official direct-hire date was October 21, 2019. (Plaintiffs' Exhibit 1, excerpts from deposition of Bryan Banks ("Banks Dep."), at 26:15-29:10.)

6.     **Banks first reported to Susan Cornelsen, the plant manager who hired Mr. Banks. (Banks Dep. 27-28, 33.)**

RESPONSE: Uncontroverted.

7.     **Ms. Cornelsen was employed by Sun Chemical from 1981 until August 2020, when she retired as the plant manager of the Kansas City site. (Exhibit 2, Deposition excerpts of Susan Cornelsen ("Cornelsen Dep."), at 8, 11-12.)**

RESPONSE: Uncontroverted.

8.     **Edward Jones became the plant manager of the Kansas City site upon Ms. Cornelsen's retirement. (Banks Dep. 34.)**

**RESPONSE**: Uncontroverted but immaterial in the context of addressing Sun Chemical's Motion for Summary Judgment.

**9. Mr. Banks has not been fired, demoted, or had his employment impacted in any negative way during his employment at Sun Chemical. (Banks Dep. 60.)**

**OBJECTION**: Plaintiffs object to this statement of fact because it is not supported by the cited deposition testimony; specifically, at page 60 of Mr. Banks's deposition, he does *not* say he was "not . . . fired" or "not . . . demoted" or "not . . . had his employment impacted in any negative way during his employment at Sun Chemical." Accordingly, the Court should disregard this statement of fact.

**RESPONSE**: Controverted. It is controverted that Mr. Banks "has not . . . had his employment impacted in any negative way during his employment at Sun Chemical" because his employment has been impacted negatively by being exposed to race discrimination and retaliation. (Plaintiffs' Exhibit 1, Banks Dep., at 41:11-43:13, 45:23-50:25, 54:2-55:25, 59:1-62:2, 73:25-74:12, 76:5-17, and 94:12-95:7.)

**C. October 2019 Incident and Sun Chemical's Timely Remedial Action**

**OBJECTION**: Plaintiffs object to this subheading in Defendant's Statement of Facts because it is argumentative. The timeliness of actions taken by Sun Chemical in response to the October 2019 Incident, and whether they are in fact remedial, are matters that remain in dispute.

**10. On October 24, 2019, Mr. Banks made a complaint to Ms. Cornelsen alleging that a co-worker, Ricardo Nevarez, cursed at Mr. Banks**

and called him the "N" word (the "October 2019 Incident"). (Compl. at ¶¶ 16-18; Intervenor Compl. at ¶¶ 17-19; Banks Dep. 48.)

OBJECTION: Plaintiffs object to this statement of fact because it is not supported by the cited deposition testimony, which has no description of the content of Mr. Banks's complaint to Ms. Cornelsen.

RESPONSE: Controverted. While there is no dispute that Mr. Banks made a complaint to Ms. Cornelsen on October 24, 2019, the content of that complaint is in dispute. Mr. Banks complained to Ms. Cornelsen not only that Mr. Nevarez cursed at him and called him the "N" word, but also that Mr. Nevarez punched a locker next to Mr. Banks's head, called him a "fucking nigger," and made him feel physically threatened. (Plaintiffs' Exhibit 1, Banks Dep., at 48:16-50:25; Plaintiffs' Exhibit 4, excerpts from deposition of Sue Cornelsen ("Cornelsen Dep."), at 54:9-24.)

11.    Mr. Nevarez is Hispanic; Mr. Banks is African-American. (Banks Dep. 54; Compl. at ¶ 15.)

RESPONSE: Uncontroverted.

12.    After Mr. Banks complained of the alleged incident, Ms. Cornelsen notified Human Resources Representative Antonella Warren, who began an investigation the same day. (Cornelsen Dep. 54-55; Exhibit 3, Ms. Warren's investigation notes).

RESPONSE: Uncontroverted.

13.    Ms. Warren spoke to numerous witnesses, who confirmed there was a heated exchange between Mr. Banks and Mr. Nevarez but differed as

to how it started. **(Exhibit 3; Exhibit 4, Deposition excerpts of Antonella Warren ("Warren Dep."), at 19.)**

RESPONSE: Controverted in part. It is uncontroverted that Ms. Warren spoke to numerous witnesses, who confirmed there was a heated exchange between Mr. Banks and Mr. Nevarez, but it is controverted that those accounts differed as to how it started. On the contrary, all the witnesses present, *including Mr. Nevarez*, told Ms. Warren that Mr. Nevarez started the heated exchange, not Mr. Banks. (Plaintiffs' Exhibit 11, investigation notes of Antonella Warren ("Investigation Notes"), at pages 1-4.) Mr. Nevarez told Ms. Warren: "As I am walking by the lunchroom, I hear Bryan talking about me and I guess I had just had it and I blew up a bit. . . . I walked up to him and said 'I'm here, do you have a problem. Why are you always in my business?'" (*Id.* at pages 3-4.) All the other witnesses confirmed that Mr. Nevarez started the heated exchange. (*Id.* at pages 1-3.)

14.     **Mr. Banks and one witness told Ms. Warren that Mr. Nevarez used the "N" word during the incident between him and Mr. Banks, but several other witnesses stated that he did not. (Exhibit 3; Warren Dep. 19.)**

RESPONSE: Controverted. Mr. Banks told Ms. Warren, "I left to go change and he followed me into the Locke [sic] room and kept yelling and swearing at me and he used the 'N' word." (Plaintiffs' Exhibit 11, Investigation Notes, at page 1.) Larry Wilhite and Joe Stahl did not hear Mr. Nevarez use the "N" word because they were *not* in the locker room when it occurred. (*Id.* at pages 1-2.) Joe Van Dolah, who *was* in the locker room at the time, confirmed to Ms. Warren that Mr. Nevarez did use the

racial epithet: "Then Bryan walked in followed by Ricardo and they were still going at it. Ric was saying he was sick of him constantly being in his business and he was an F'g Nigger." (*Id.* at page 2.) The only other person present for the part of the incident in the locker room besides Mr. Banks and Mr. Van Dolah was Mr. Nevarez, and he was the *only* one who said he did not use the "N" word when he was yelling at Mr. Banks. (*Id.* at page 4.)

**15.    Mr. Nevarez admitted cursing at Mr. Banks, but adamantly denied calling him the "N" word. (Exhibit 3).**

**RESPONSE**: Uncontroverted; however, for clarity, the descriptive word used by Ms. Warren to characterize Mr. Nevarez's denial was "emphatically" not "adamantly." (Plaintiffs' Exhibit 11, Investigation Notes, at page 4.)

**16.    Despite these differing witness accounts, Ms. Warren and Ms. Cornelsen issued a final written warning to Mr. Nevarez on November 7, 2019, and suspended him without pay for five (5) days. (Exhibit 5, Final Written Warning Notice issued to Mr. Nevarez).**

**OBJECTION**: Plaintiffs object to this statement of fact because the phrase "Despite these differing witness accounts" is argumentative and makes this an improper statement of fact.

**RESPONSE**: Controverted in part. It is uncontroverted that Ms. Warren and Ms. Cornelsen issued a Final Written Warning Notice to Mr. Nevarez on November 7, 2019 (even though it is dated November 7, 2018) and suspended him without pay for a total of five days spread out over two weeks (November 12-14 and 18-19, 2019).

(Plaintiffs' Exhibit 12, Final Written Warning Notice to Ricardo Nevarez ("Nevarez Final Written Warning Notice"), at page 1.) But it is controverted that the witness accounts they had received were "differing" in material ways. As explained in response to Statement of Fact 13 above, all the witnesses present, *including Mr. Nevarez*, told Ms. Warren that Mr. Nevarez started the heated exchange, not Mr. Banks. (Plaintiffs' Exhibit 11, Investigation Notes, at pages 1-4.) Of the three persons present in the locker room for that part of the incident, all three, *including Mr. Nevarez*, told Ms. Warren that Mr. Nevarez slammed the locker next to Mr. Banks, and two out of three told Ms. Warren that Mr. Nevarez used the "N" word while doing so (only Mr. Nevarez denied that he'd used the "N" word, claiming instead that he'd called Mr. Banks "a Nobody"). (*Id.*)

**17.    Mr. Nevarez then experienced significant health issues, was on a leave of absence, and has since passed away. (Banks Dep. 56.)**

**RESPONSE**: Uncontroverted.

**18.    Ms. Warren also learned from her investigation that Mr. Banks acted aggressively towards Mr. Nevarez during this incident and may have threatened him. (Warren Dep. 31-32.)**

**OBJECTION**: Plaintiffs object to this statement of fact because it is unclear whether the "fact" being asserted is (a) the manner in which Mr. Banks acted towards Mr. Nevarez during the incident or (b) Ms. Warren's subjective belief, supposedly formed as a result of her investigation, that Mr. Banks acted aggressively towards

Case 4:23-cv-00694-RK    Document 55    Filed 08/09/24    Page 16 of 55

Mr. Nevarez during this incident and may have threatened him. Plaintiffs will address both possibilities.

**RESPONSE**: Controverted (*Mr. Banks's behavior toward Mr. Nevarez*). As explained in response to Statement of Fact 13 above, all the witnesses present, *including Mr. Nevarez*, told Ms. Warren that Mr. Nevarez started the heated exchange, not Mr. Banks. (Plaintiffs' Exhibit 11, Investigation Notes, at pages 1-4.) *None* of the witnesses said that Mr. Banks threatened Mr. Nevarez. (*Id.*) The only witness mention of Mr. Banks being "aggressive" was from Larry Wilhite, who "heard [Mr. Banks] say, if you want to come at me, I can bring 30 guys to back me up. So, he was being aggressive as well." (*Id.* at page 1.) But Mr. Nevarez's own account shows that he was the aggressor throughout the incident: "I got more heated and I did swear but so did he. [Mr. Banks] walked away to go to the locker room and change and so did I. When I got in there, I was still upset, and we continued with some more words and cussing back and forth. . . . We FU'd each other a few more times and I slammed the locker next to his with my palm for emphasis and then he walked away." (*Id.* at page 4.) For these reasons, the manner in which Mr. Banks reacted to Mr. Nevarez's verbal and physical harassment is a fact that remains in dispute.

Controverted (*Ms. Warren's subjective belief about who was aggressive and threatening during the incident*). As to Mr. Nevarez's behavior, Ms. Warren testified that Mr. Nevarez admitted to being "rather aggressive with [Mr. Banks]" during the incident, including hitting a locker next to Mr. Banks. (Plaintiffs' Exhibit 5, excerpts from deposition of Antonella Warren ("Warren Dep."), at 21:21-22:8.) At the

conclusion of her investigation, Ms. Warren issued Mr. Nevarez a Final Written Warning Notice for "Aggressive, inappropriate behavior in violation of Company policy," noting in part that he "physically intimidated another employee, Bryan Banks". (*Id.* at 23:23-24:14; Plaintiffs' Exhibit 12, Nevarez Final Written Warning Notice, at page 1.) As to Mr. Banks's behavior, Ms. Warren testified that "there was discussion [from the witnesses inside the lunchroom] that Mr. Banks had been aggressive right back with Mr. Nevarez, even threatening to go out in the parking lot, mess him up. They were both getting in each other's face and puffing their chests and doing the whole nine yards. They were both swearing at each other. They were both doing that kind of action [that] was only escalating things." (Plaintiffs' Exhibit 5, Warren Dep., at 28:19-29:12.) Most of these claims by Ms. Warren are not substantiated by the witness statements contained in her investigative notes, particularly because *none* of the witnesses said Mr. Banks did anything threatening. (Plaintiffs' Exhibit 11, Investigation Notes, at pages 1-4.) In addition, the Written Warning Notice issued to Mr. Banks by Ms. Warren contains no mention of aggressive or threatening behavior by Mr. Banks, only mentioning "Inappropriate behavior" of "us[ing] profanity against [Mr. Nevarez]." (Plaintiffs' Exhibit 6, Written Warning Notice to Bryan Banks ("Banks Written Warning Notice"), at page 1.) For these reasons, Ms. Warren's subjective belief and conclusion about who was aggressive and threatening during the incident is a fact that remains in dispute.

**19.     As a result of the Company's investigation into the October 2019 incident, Mr. Banks was given a first warning by Ms. Cornelsen (but no**

discipline) due to his escalation of the matter. **(Exhibit 6, Written Warning Notice issued to Mr. Banks; Warren Dep. 27, 30-31.)**

**RESPONSE**: Controverted. The November 7, 2019, Written Warning Notice issued to Mr. Banks was unquestionably discipline, a first warning to highlight the infringement, which is part of the disciplinary process at Sun Chemical. (Plaintiffs' Exhibit 4, Cornelsen Dep., 78:15-79:6 and 88:23-89:1.) The Written Warning Notice itself clearly states "Discipline: Warning only" just above the signatures. (Plaintiffs' Exhibit 6, Banks Written Warning Notice, at page 1.) This fact remains in dispute because of conflicting testimony from Sun Chemical that the Written Warning Notice "was not really discipline. It was just a verbal warning coaching him . . . ." (Plaintiffs' Exhibit 5, Warren Dep., at 27:11-20 and 30:14-31:7.) Sun Chemical has also given shifting reasons for issuing the Written Warning Notice to Mr. Banks. The notice itself says it is for "Inappropriate behavior" of "us[ing] profanity against Ricardo [Nevarez]." (Plaintiffs' Exhibit 6, Banks Written Warning Notice, at page 1.) Conflicting testimony from Sun Chemical now says the Written Warning Notice was issued to Mr. Banks because he was "escalating things" and "[i]t was really intended to be just a verbal warning to him on that fighting back behavior." (Plaintiffs' Exhibit 5, Warren Dep., at 28:19-29:12 and 30:14-32:1.)

**20.** **Mr. Banks was counseled that he should have walked away from the incident and should notify a supervisor instead of escalating the dispute with Mr. Nevarez. (Exhibit 6; Warren Dep. 27; Banks Dep. 57.)**

**RESPONSE**: Controverted. The November 7, 2019, Written Warning Notice, on its face, advises Mr. Banks: "Our investigation also revealed that you used profanity against Ricardo [Nevarez]. In the future, you need to refrain from doing that. If an incident happens again, you should walk away and alert a supervisor." (Plaintiffs' Exhibit 6, Banks Written Warning Notice, at page 1.) The notice does not say anything about escalating a dispute with Mr. Nevarez. (*Id.*) Similarly, when Ms. Cornelsen and Ms. Warren presented the Written Warning Notice to Mr. Banks, they told him that "you get a written warning for using profanity." (Plaintiffs' Exhibit 1, Banks Dep., at 57:24-59:17.)

**21.    Mr. Banks was not suspended or otherwise disciplined, the counseling was a warning only, and his employment was not affected in any way. (Exhibit 6; Banks Dep. 59-60.)**

**RESPONSE**: Controverted in part. It is uncontroverted that Mr. Banks was not suspended, but it is controverted whether he was "otherwise disciplined" or "the counseling was a warning only" or "his employment was not affected in any way." As explained in response to Statements of Fact 19 and 20 above, the Written Warning Notice itself was not a mere "verbal warning coaching," as claimed by Ms. Warren, but was actually a written disciplinary action, as confirmed by Ms. Cornelsen and the notice itself. (Plaintiffs' Exhibit 5, Warren Dep., at 27:11-20 and 30:14-31:7; Plaintiffs' Exhibit 4, Cornelsen Dep., 78:15-79:6 and 88:23-89:1.) Mr. Banks's employment was further affected when he was written up for using profanity while other employees,

who have not complained to HR about racial harassment, use profanity and are not written up. (Plaintiffs' Exhibit 1, Banks Dep., at 59:1-60:12.)

**22.    The warning Mr. Banks received noted that the Company "has taken appropriate action" against Mr. Nevarez. (Exhibit 4).**

**OBJECTION**: Plaintiffs object to this statement of fact because it is not supported by the cited document. While the document does state that Sun Chemical "has taken appropriate action[,]" it does not in any way identify what action or actions were taken or who was impacted by or involved in such action(s). (Plaintiffs' Exhibit 6, Banks Written Warning Notice, at page 1.) Accordingly, the Court should disregard this statement of fact.

**RESPONSE**: Controverted. The Written Warning Notice issued to Mr. Banks says, in pertinent part: "On 10/24/2019, you reported an incident that you felt another employee, Ricardo Nevarez, was verbally and physically harassing toward you. Sun Chemical does not condone this type of behavior and, after investigating, has taken appropriate action." (Plaintiffs' Exhibit 6, Banks Written Warning Notice, at page 1.) The notice does not say any action was taken "against Mr. Nevarez." (*Id.*)

**23.    Ms. Cornelsen, the individual issuing the counseling to Mr. Banks, was also involved in the decision to hire Mr. Banks, thus negating any discriminatory or retaliatory animus on her part. (Exhibit 6; Banks Dep. 27-28, 33.)**

**OBJECTION**: Plaintiffs object to this statement of fact because it is not supported by the cited document and deposition testimony, and it is argumentative.

The Written Warning Notice issued to Mr. Banks does not describe who was "involved in the decision to hire Mr. Banks." (Plaintiffs' Exhibit 6, Banks Written Warning Notice, at page 1.) The cited deposition testimony supports only the facts that Mr. Banks *reported to* Sue Cornelsen when he was employed as a temporary worker, and she continued to *supervise* Mr. Banks when he became a full-time employee. (Plaintiffs' Exhibit 1, Banks Dep., at 27:3-28:17 and 33:1-24.) None of these citations to the evidentiary record support the proposition that Ms. Cornelsen was "involved in the decision to hire Mr. Banks[.]" Furthermore, the statement "thus negating any discriminatory or retaliatory animus on her part" is argumentative and makes this an improper statement of fact. Accordingly, the Court should disregard this statement of fact in its entirety.

**RESPONSE**: Controverted. While Mr. Banks *reported to* and was *supervised by* Ms. Cornelsen, both as a temporary and a full-time worker, there is no indication she was involved in *the decision to hire him*. (Plaintiffs' Exhibit 1, Banks Dep., at 27:3-28:17 and 33:1-24.) The offer letter referenced in the cited deposition testimony (Banks Deposition Exhibit No. 2) was not from Ms. Cornelsen but instead from Chris Johnson, Director of Human Resources for Sun Chemical. (Plaintiffs' Exhibit 2, offer letter to Bryan Banks ("Banks Offer Letter"), at pages 1-2.) Furthermore, Mr. Banks testified he was hired on by a woman in HR who was neither Ms. Warren nor Ms. Cornelsen. (Plaintiffs' Exhibit 1, Banks Dep., at 51:22-52:4.) The person who issued the "counseling" to Mr. Banks is also in dispute. While Ms. Cornelsen is the one who signed the Written Warning Notice given to Mr. Banks, she testified that the decision

to issue that discipline was made by agreement between herself and Ms. Warren; however, Ms. Cornelsen also testified that she took the advice of Ms. Warren, who had more authority than she did, and essentially did what HR (Ms. Warren) told her to do. (Plaintiffs' Exhibit 4, Cornelsen Dep., at 77:1-78:14.)

**24.    The discipline of Mr. Nevarez ended any misconduct toward Mr. Banks by Mr. Nevarez. (Banks Dep. 56, 62, 64-65, 95.)**

**RESPONSE**: Controverted. After Sun Chemical disciplined Mr. Nevarez regarding the October 2019 incident, he continued to make comments in Spanish when Mr. Banks would walk past him, including saying "negro," which is "black" in Spanish. (Plaintiffs' Exhibit 1, Banks Dep., at 55:3-25.)

**25.    The Company has no evidence that Mr. Nevarez allegedly directed the "N" word toward anyone else at the Kansas City site and Mr. Banks testified that he has never heard Mr. Nevarez use the "N" word outside of its alleged use during the October 2019 incident. (Banks Dep. 56, 62, 64-65, 95; Exhibit 7, Declaration of Edward Jones; Exhibit 8, Sun Chemical's Response to EEOC's Requests for Information).**

**RESPONSE**: Controverted. During Ms. Warren's investigation of the October 2019 incident, three employees told her they'd heard Mr. Nevarez using the "N" word previously: Joe Van Dolah heard Mr. Nevarez say "he didn't like that F'g Nigger[,] referring to Bryan [Banks]"; Kristopher Savage heard Mr. Nevarez use the "N" word in the workplace but not directly at someone; and Maurilio "Flacco" Calderon heard Mr. Nevarez say the "N" word toward employee Mike Smallwood. (Plaintiffs' Exhibit

11, Investigation Notes, at pages 3-5.) In fact, Mr. Calderon had told Mr. Smallwood, the only other African American employee besides Mr. Banks at Sun Chemical's Kansas City facility, that Mr. Nevarez was calling him the "N" word, and Mr. Smallwood reported it to Ms. Cornelsen. (Plaintiffs' Exhibit 3, excerpts from deposition of Michael Smallwood ("Smallwood Dep."), at 17:11-18:18, 32:20-34:24, 46:1-18, 55:21-58:7.)

**26.    Neither Ms. Cornelsen nor the current plant manager, Edward Jones, are aware of any other time that Mr. Nevarez directed the "N" word at anyone at its Kansas City facility. (Cornelsen Dep. 50; Exhibit 7).**

**OBJECTION**: Plaintiffs object to this statement of fact because it is not supported by the cited deposition testimony, and the reference to current plant manager Edward Jones, and his related affidavit, are immaterial in the context of addressing Sun Chemical's Motion for Summary Judgment. In the cited deposition testimony, Ms. Cornelsen says she "never heard [Mr. Nevarez] use an epithet, slur or a negative stereotype[,]" but she does not address whether any use by Mr. Nevarez of the "N" word was ever reported to her. (Plaintiffs' Exhibit 4, Cornelsen Dep., at 50:3-17.) According to his affidavit (Exhibit 7 to Defendant's Suggestions, Doc. 52-7), Mr. Jones was not employed by Sun Chemical until August 2020, so he would have had no opportunity to know of Mr. Nevarez's use of the "N" word prior to the October 2019 incident, making his affidavit immaterial in the context of addressing Sun Chemical's Motion for Summary Judgment. Accordingly, the Court should disregard this statement of fact in its entirety.

**RESPONSE**: Controverted. As described in response to the previous Statement of Fact above, Mr. Smallwood reported to Ms. Cornelsen, prior to the October 2019 incident, that Mr. Nevarez had been calling him the "N" word. (Plaintiffs' Exhibit 3, Smallwood Dep., at 17:11-18:18, 32:20-34:24, 46:1-18, 55:21-58:7.)

**27.** **Mr. Banks has not made any complaints to the current plant manager, Mr. Jones, about Mr. Nevarez, or any complaints relating to race discrimination or retaliation. (Exhibit 7).**

**OBJECTION**: Plaintiffs object to this statement of fact because the reference to current plant manager Edward Jones, and his related affidavit, are not material to the claims in this case. According to his affidavit (Exhibit 7 to Defendant's Suggestions, Doc. 52-7), Mr. Jones was not employed by Sun Chemical until August 2020, so he would have had no opportunity to know of Mr. Banks's complaints about Mr. Nevarez in October 2019, Sun Chemical's retaliation against Mr. Banks in November 2019, or Sun Chemical's knowledge of events prior to the October 2019 incident, making his affidavit immaterial in the context of addressing Sun Chemical's Motion for Summary Judgment. Accordingly, the Court should disregard this statement of fact in its entirety.

**RESPONSE**: Uncontroverted but immaterial in the context of addressing Sun Chemical's Motion for Summary Judgment.

### D. Mr. Banks' EEOC Charge and Present Lawsuit

**28.** **Nevertheless, Mr. Banks filed an EEOC Charge dated May 10, 2020, alleging race discrimination and retaliation based on the October 2019**

**incident and counseling he received. (Exhibit 9, EEOC Charge filed by Banks).**

**OBJECTION**: Plaintiffs object to this statement of fact because inclusion of the phrase "Nevertheless" is argumentative and makes this an improper statement of fact. Accordingly, the Court should disregard this statement of fact in its entirety.

**RESPONSE**: Controverted. This statement of fact is an incomplete and inaccurate summary of the allegations in Mr. Banks's Charge of Discrimination. The allegations of "race discrimination" and "retaliation" are not based merely on the October 2019 incident, but also on the Plant Manager being "aware of [Mr. Nevarez's] previous behavior of doing the same thing" and being "written up" after he "reported the harassment to HR." (Exhibit 9 to Defendant's Suggestions, Doc. 52-9.) There is also no allegation in the Charge of Discrimination about "counseling" received by Mr. Banks. (*Id.*)

29.    **Mr. Banks alleged that Mr. Nevarez used the "N" word before and that he harassed African-American employees. (*Id.*)**

**RESPONSE**: Controverted. This statement of fact is an incomplete and inaccurate summary of the referenced allegations in Mr. Banks's Charge of Discrimination, which are: "On or about October 23, 2019, a Combination Production Tech came into the break room cussing at me. I walked away but he followed me to the locker room where he called me a 'nigger' three times and continued cussing at me. I reported the harassment to the Plant Manager. She is best friends with the Tech and was aware of his previous behavior of doing the same thing. Because the

Tech has continued to harass African American employees, I reported the harassment to HR. In or about November 2019, a week or two after the investigation was completed, I was written up." (Exhibit 9 to Defendant's Suggestions, Doc. 52-9.)

**30.** **The EEOC Charge inaccurately asserted that Mr. Nevarez "told another employee" to tell "that 'N' word" that nothing happened to him and, instead, Mr. Banks was written up. (*Id*.)**

**OBJECTION**: Plaintiffs object to this statement of fact because inclusion of the phrase "inaccurately" is argumentative and makes this an improper statement of fact. Plaintiffs further object to this statement of fact because it is unclear whether the "fact" being asserted is (a) Mr. Banks alleged in his Charge of Discrimination that Mr. Nevarez "told another employee" to tell "that 'N' word" that nothing happened to him and, instead, Mr. Banks was written up; or (b) such allegation in Mr. Banks's Charge of Discrimination is inaccurate. Accordingly, the Court should disregard this statement of fact in its entirety, but Plaintiffs will address both possibilities.

**RESPONSE**: Controverted (*Mr. Banks alleged in his Charge of Discrimination that Mr. Nevarez "told another employee" to tell "that 'N' word" that nothing happened to him and, instead, Mr. Banks was written up*). This portion of the statement of fact is not supported by the cited document. The actual allegation in the Charge of Discrimination (Exhibit 9 to Defendant's Suggestions, Doc. 52-9) is, "The Tech told another employee to come tell the 'nigger' that nothing happened to him and he got me written up instead." From context, "The Tech" is Mr. Nevarez, but the

"another employee" to whom Mr. Nevarez is alleged to be speaking is not identified. The statement of fact is an inaccurate summary of this allegation.

Controverted (*such allegation in Mr. Banks's Charge of Discrimination is inaccurate*). This portion of the statement of fact is also not supported by the cited document. There is nothing in the Charge of Discrimination (Exhibit 9 to Defendant's Suggestions, Doc. 52-9) that suggests the previously-mentioned allegation is inaccurate.

**31.     Contrary to Plaintiffs' allegation in the Charge, the undisputed evidence shows that Mr. Nevarez *was* disciplined as a result of the October 2019 incident in that he was suspended for five (5) days, without pay, and issued a final written warning. (Exhibit 5).**

**OBJECTION**: Plaintiffs object to this statement of fact because inclusion of the phrase "Contrary to Plaintiffs' allegation in the Charge, the undisputed evidence shows that Mr. Nevarez *was* disciplined" is argumentative and makes this an improper statement of fact. Plaintiffs further object to this statement of fact because it is unclear whether the "fact" being asserted is (a) Mr. Banks alleged in his Charge of Discrimination that Mr. Nevarez was not disciplined as a result of the October 2019 incident or (b) Mr. Nevarez was disciplined as a result of the October 2019 incident in that he was suspended for five days, without pay, and issued a final written warning. Accordingly, the Court should disregard this statement of fact in its entirety, but Plaintiffs will address both possibilities.

**RESPONSE**: Controverted (*Mr. Banks alleged in his Charge of Discrimination that Mr. Nevarez was not disciplined as a result of the October 2019 incident*). This portion of the statement of fact is unsupported by the cited document, the Final Written Warning Notice issued to Mr. Nevarez, because it does not contain or otherwise reference any allegations made by Mr. Banks in his Charge of Discrimination. Even looking at Mr. Banks's Charge of Discrimination (Exhibit 9 to Defendant's Suggestions, Doc. 52-9), there is no allegation therein that Mr. Nevarez was not disciplined after the October 2019 incident.

Uncontroverted (*Mr. Nevarez was disciplined as a result of the October 2019 incident in that he was suspended for five days, without pay, and issued a final written warning*). It is uncontroverted that Ms. Warren and Ms. Cornelsen issued a Final Written Warning Notice to Mr. Nevarez on November 7, 2019 (even though it is dated November 7, 2018) and suspended him without pay for a total of five days spread out over two weeks (November 12-14 and 18-19, 2019). (Plaintiffs' Exhibit 12, Nevarez Final Written Warning Notice, at page 1.)

32. **Mr. Banks received only a warning and counseling. (Exhibit 6).**

**OBJECTION**: Plaintiffs object to this statement of fact because it is vague, unsupported by the cited document, and therefore argumentative at best. This statement of fact gives no timeframe or other context for its claim that "Mr. Banks received only a warning or counseling." Accordingly, the Court should disregard this statement of fact in its entirety.

**RESPONSE**: Controverted in part. It is uncontroverted that Sun Chemical issued a Written Warning Notice to Mr. Banks on November 7, 2019. (Plaintiffs' Exhibit 6, Banks Written Warning Notice, at page 1.) To the extent this statement of fact is asserting anything beyond that, it is too vague to be comprehensible, and is therefore controverted.

33. **After Sun Chemical submitted a Statement of Position and responded to the EEOC's Requests for Information denying the allegations in the Charge, the EEOC issued a finding on September 29, 2022, that Sun Chemical violated Title VII for allegedly failing "to take prompt remedial action against [Mr. Nevarez who] repeatedly used the "N" word in the workplace" and that Mr. Banks was discriminated against because of his race and color . . . and subject to retaliation when he was disciplined for his complaint of harassment." (Exhibit 10, Determination Letter).**

**OBJECTION**: Plaintiffs object to this statement of fact because actions taken by the parties during the administrative proceedings prior to this suit are immaterial in the context of addressing Sun Chemical's Motion for Summary Judgment. Accordingly, the Court should disregard this statement of fact in its entirety.

**RESPONSE**: Uncontroverted but immaterial. While Plaintiffs do not dispute the EEOC issued the cited Determination Letter, such issuance is immaterial here. Sun Chemical is seeking summary judgment on the claims raised by the Plaintiffs in their respective Complaints filed in this Court, not on the EEOC's issuance of a Determination Letter during administrative proceedings.

34.     On October 14, 2022, Sun Chemical submitted a Request for Reconsideration to the EEOC, which was denied. (Exhibit 11, Request for Reconsideration).

**OBJECTION**: Plaintiffs object to this statement of fact because actions taken by the parties during the administrative proceedings prior to this suit are immaterial in the context of addressing Sun Chemical's Motion for Summary Judgment. Accordingly, the Court should disregard this statement of fact in its entirety.

**RESPONSE**: Uncontroverted but immaterial. While Plaintiffs do not dispute the EEOC received and denied the cited Request for Reconsideration, such receipt and denial is immaterial here. Sun Chemical is seeking summary judgment on the claims raised by the Plaintiffs in their respective Complaints filed in this Court, not on the EEOC's denial of a Request for Reconsideration during administrative proceedings.

35.     Sun Chemical made clear to the EEOC that the Company is unaware of Mr. Nevarez directing the "N" word at any other employee either before or after the incident with Mr. Banks, and that Mr. Banks (or any other employee) never reported that Mr. Nevarez had directed the word toward anyone else. (Exhibit 8, Sun Chemical's Response to EEOC's Requests for Information).

**OBJECTION**: Plaintiffs object to this statement of fact because actions taken by the parties during the administrative proceedings prior to this suit are immaterial in the context of addressing Sun Chemical's Motion for Summary Judgment.

Plaintiffs further object because inclusion of the phrase "made clear" is argumentative and makes this an improper statement of fact. Accordingly, the Court should disregard this statement of fact in its entirety.

**RESPONSE**: Controverted but immaterial. While Plaintiffs do not dispute the EEOC received the cited Response to EEOC's Requests for Information, such Response neither supports this statement of fact nor makes anything "clear." After more than two pages of objections and vague qualifications, Sun Chemical provided responses to eleven separate requests, all of which were provided "Subject to and without waiving any objections[.]" (Exhibit 8 to Defendant's Suggestions, Doc. 52-8.) Furthermore, even the responses given subject to objections do not address Sun Chemical's awareness or unawareness of Mr. Nevarez using the "N" word at other employees. (*Id.*)

**36.** **The EEOC then brought this lawsuit against Sun Chemical even though Mr. Nevarez was disciplined (Exhibit 5); Mr. Banks remains employed at Sun Chemical (Compl. at ¶ 26.); and Mr. Banks had no other complaints relating to Mr. Nevarez after Mr. Nevarez was disciplined. (Banks Dep. 56, 62, 64-65, 95.)**

**OBJECTION**: Plaintiffs object to this statement of fact because inclusion of the phrase "The EEOC then brought this lawsuit against Sun Chemical even though" is argumentative and makes this an improper statement of fact. Accordingly, the Court should disregard this statement of fact in its entirety.

Case 4:23-cv-00694-RK    Document 55    Filed 08/09/24    Page 32 of 55

**RESPONSE**: Controverted in part. It is uncontroverted that Mr. Nevarez was disciplined with the cited Final Written Warning Notice. It is uncontroverted that Mr. Banks remains employed at Sun Chemical. As for whether Mr. Banks had complaints relating to Mr. Nevarez after Mr. Nevarez was disciplined, the cited portions of his deposition testimony do *not* support that he had no such complaints. In, fact Mr. Banks *did* have other complaints relating to Mr. Nevarez after he was disciplined, including that Mr. Nevarez told a vendor that Mr. Banks was trying to get Mr. Nevarez fired, and that Mr. Nevarez referred to Mr. Banks as "negro," which is Spanish for "black." (Plaintiffs' Exhibit 1, Banks Dep., at 54:2-55:25.)

**37.     Mr. Banks joined the lawsuit as the Intervenor Plaintiff. (*See* Intervenor Compl.)**

**RESPONSE**: Uncontroverted.

## II.     PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

### A. Introductory Facts

38.     In the summer of 2019, Bryan Banks began working at Sun Chemical's Kansas City Facility, through a staffing company, as a temporary production technician; then, in September 2019, Sun Chemical asked Mr. Banks to continue in the same production technician position full-time, and his official direct-hire date was October 21, 2019. (Plaintiffs' Exhibit 1, Banks Dep., at 26:15-29:10.)

39.     Sue Cornelsen was a manager at Sun Chemical's Kansas City Facility from at least 1994 until her retirement in August 2020; specifically, she was the Operations Manager from at least 1994 until approximately 2015, when she became

the Plant Manager (also known as Site Manager), who oversees the lab, shipping, and production departments. (Plaintiffs' Exhibit 4, Cornelsen Dep., at 8:6-24, 11:9-15:25.)

## B. The October 24, 2019, Incident Between Nevarez and Banks

40. Early in the morning on October 24, 2019, before the start of his shift, Mr. Banks was in the lunchroom with three of his production coworkers, Larry Wilhite, Joe Stahl, and Joe Van Dolah, but production coworker Mr. Nevarez had not arrived yet. (Plaintiffs' Exhibit 1, Banks Dep., at 41:11-43:13 and 45:23-47:21; Plaintiffs' Exhibit 8, excerpts from deposition of Joseph Stahl ("Stahl Dep."), at 13:2-14:13; Plaintiffs' Exhibit 11, Investigation Notes, at pages 1-4.)

41. Mr. Stahl asked the others where Mr. Nevarez was, and Mr. Banks said he did not know. (*Id.*)

42. Mr. Nevarez was walking by the lunchroom, thought he heard Mr. Banks mention his name, and entered the lunchroom to confront Mr. Banks. (*Id.*)

43. Mr. Nevarez "went straight up to [Mr. Banks] with his chest puffed out and his face red," said "Stop saying my F'g name, it is none of your F'g business you MF[,]" and said he would "mess [Mr. Banks] up." (*Id.*)

44. After Mr. Nevarez confronted Mr. Banks in the lunchroom, Mr. Banks walked away from Mr. Nevarez and into the locker room to get changed for his shift. (*Id.*)

45. Mr. Nevarez followed Mr. Banks into the locker room, continuing to call him a "stupid motherfucker" as he paced back and forth next to Mr. Banks. (*Id.*)

46. As Mr. Banks bent over in front of his locker, Mr. Nevarez punched the locker next to Mr. Banks's head and called him a "fucking nigger." (*Id.*)

47.     Mr. Banks was shaken and walked away, heading out of the locker room.
(*Id.*)

48.     Mr. Nevarez followed Mr. Banks to the locker room door, screaming
"fucking nigger" at him three more times. (*Id.*)

49.     Describing the lunchroom portion of the incident, Mr. Stahl said, "it was
just really intense in there[,]" and Mr. Van Dolah said, "it was getting so intense that
I walked out to go to the locker room." (Plaintiffs' Exhibit 11, Investigation Notes, at
pages 2-3.)

50.     Describing the locker room portion of the incident, Mr. Van Dolah said,
"I have never witnessed something so intense." (Plaintiffs' Exhibit 11, Investigation
Notes, at pages 3.)

### C. Sun Chemical's Investigation of the October 2019 Incident

51.      Later in the morning on October 24, 2019, Mr. Banks reported to Sue
Cornelsen that Mr. Nevarez called him a "fucking nigger," punched a locker by his
head, and made him feel threatened. Ms. Cornelsen made an excuse for Mr. Nevarez,
saying he had a bad night, but told Mr. Banks she would look into it and talk to Mr.
Nevarez. (Plaintiffs' Exhibit 1, Banks Dep., at 48:16-50:25; Plaintiffs' Exhibit 4,
Cornelsen Dep., at 54:9-24.)

52.     Later in the day on October 24, 2019, after speaking with Mr. Banks,
Ms. Cornelsen went to the locker room and confirmed there was a dent in the locker;
spoke with Mr. Nevarez, who admitted he had slammed his fist against the locker
next to Mr. Banks; and called Antonella Warren, a Sun Chemical HR Manager, to
report the incident. (Plaintiffs' Exhibit 4, Cornelsen Dep., at 54:9-55:14.)

53.     Ms. Warren started her investigation by interviewing via phone the five employees who had been present for the October 24, 2019, incident: Bryan Banks, Larry Wilhite, Joe Stahl, Joe Van Dolah, and Ricardo Nevarez. (Plaintiffs' Exhibit 11, Investigation Notes, at pages 1-4.)

54.     All the witnesses present for October 24, 2019, incident, *including Mr. Nevarez*, told Ms. Warren that Mr. Nevarez started the heated exchange, not Mr. Banks. (Plaintiffs' Exhibit 11, Investigation Notes, at pages 1-4.)

55.     Mr. Banks reported to Ms. Warren a prior incident where Mr. Nevarez swore at him, and coworker Kristofer Savage told Mr. Nevarez to stop swearing; Mr. Banks also reported to Ms. Warren that another production coworker, Mike Smallwood, told him he had also been called a "Nigger" by Mr. Nevarez before. (Plaintiffs' Exhibit 11, Investigation Notes, at page 1.)

56.     Mr. Stahl confirmed to Ms. Warren that, while they were in the lunchroom, Mr. Nevarez threatened to "mess [Mr. Banks] up" and was "definitely trying to be intimidating." (Plaintiffs' Exhibit 11, Investigation Notes, at page 2.)

57.     The only witness to the locker room portion of the incident other than Mr. Banks and Mr. Nevarez was Mr. Van Dolah, and he confirmed to Ms. Warren that Mr. Nevarez called Mr. Banks a "F'g Nigger" and slammed his hand into the locker next to Mr. Banks. (Plaintiffs' Exhibit 1, Banks Dep., at 46:17-47:18; Plaintiffs' Exhibit 11, Investigation Notes, at pages 1-3.)

58.     Mr. Van Dolah also reported to Ms. Warren that he had heard Mr. Nevarez refer to Mr. Banks as a "F'g Nigger" before, and he noticed that Mr. Nevarez

never spoke directly to Mr. Banks or looked him in the eye. (Plaintiffs' Exhibit 11, Investigation Notes, at page 3.)

59. Mr. Van Dolah also reported to Ms. Warren that he knew Mr. Nevarez previously had a really bad confrontation with Mike Smallwood (who, like Mr. Banks, is African American), and Mr. Smallwood was vocal about Mr. Nevarez being prejudiced. (Plaintiffs' Exhibit 11, Investigation Notes, at page 3.)

60. On October 30, 2019, Ms. Warren interviewed Kristofer Savage, a lab worker who was not present for the incident; Mr. Savage reported to Ms. Warren that he had heard Mr. Nevarez use the "N" word before but never directly at someone. (Plaintiffs' Exhibit 11, Investigation Notes, at page 5.)

61. On October 30, 2019, Ms. Warren interviewed Maurilio "Flacco" Calderon, a production coworker who was not present for the incident; Mr. Calderon reported to Ms. Warren that, during a prior incident between Mr. Nevarez and Mr. Smallwood, he heard Mr. Nevarez say "Nigger" to Mr. Smallwood. (Plaintiffs' Exhibit 11, Investigation Notes, at pages 4-5; Plaintiffs' Exhibit 5, Warren Dep., at 19:3-23.)

62. Ms. Warren did not talk with Mr. Smallwood, the only other African American besides Mr. Banks at the Kansas City Facility at the time, during her investigation of the October 24, 2019, incident. (Plaintiffs' Exhibit 5, Warren Dep., at 20:11-13.)

63. As a result of her investigation, Ms. Warren concluded that Mr. Nevarez initiated the interaction with Mr. Banks in the lunchroom, Mr. Banks walked away from Mr. Nevarez in the lunchroom into the locker room, Mr. Nevarez followed Mr.

Banks from the lunchroom into the locker room, and Mr. Nevarez slammed the locker next to Mr. Banks and called him the "N word" while they were in the locker room. (Plaintiffs' Exhibit 5, Warren Dep., at 31:8-33:3.)

### D. Sun Chemical's Prior Knowledge of Hostile Work Environment Created by Nevarez

64.     Until Sun Chemical hired Mr. Banks in 2019, Mike Smallwood had been the only African American employee at the Kansas City Facility for approximately thirty years. (Plaintiffs' Exhibit 3, Smallwood Dep., at 33:15-34:5.)

65.     During his employment with Sun Chemical before Mr. Banks was hired, Mr. Smallwood heard Mr. Nevarez calling him names, mostly in Spanish, and one of their coworkers, Mr. Calderon, told Mr. Smallwood that Mr. Nevarez was calling him the "N" word. (Plaintiffs' Exhibit 3, Smallwood Dep., at 17:11-18:18 and 32:20-34:24.)

66.     Mr. Smallwood complained many times to Ms. Cornelsen, prior to Mr. Banks being hired, that Mr. Nevarez had been calling him the "N" word, and it was creating a hostile work environment. (Plaintiffs' Exhibit 3, Smallwood Dep., at 17:11-18:18, 22:2-23:8, 32:20-34:24, 46:1-18, and 55:21-58:7.)

67.     On approximately May 24, 2017, there was an incident at the Kansas City Facility involving an argument between Mr. Smallwood and Mr. Nevarez. Ms. Cornelsen heard the argument in the plant from her office and went to address it. She physically got between them, settled them down, and counseled each of them on yelling and screaming and threatening. (Plaintiffs' Exhibit 4, Cornelsen Dep., at 51:17-52:22; Plaintiffs' Exhibit 7, Acknowledgement to Ricardo Nevarez ("Nevarez Acknowledgement"), at page 1.)

68. As a result of the May 24, 2017, incident between Mr. Nevarez and Mr. Smallwood, Ms. Cornelsen gave Mr. Nevarez an "Acknowledgement" on May 26, 2017, telling him: "You responded correctly and removed yourself from the area to insure [sic] the altercation did not escalate. . . . You responded to the altercation correctly and were not the aggressor." Ms. Cornelsen did not give Mr. Smallwood a similar "Acknowledgement." (Plaintiffs' Exhibit 7, Nevarez Acknowledgement, at page 1; Plaintiffs' Exhibit 3, Smallwood Dep., at 18:19-19:16 and 53:1-55:20.)

### E. Discipline and Non-Discipline Issued to Banks by Sun Chemical in November 2019

69. On November 6, 2019, after Mr. Banks "left a message on the general voicemail stating that [he] would not be in that day[,]" Ms. Cornelsen gave Mr. Banks a letter reminding him that "[w]e have requested that these call-ins be made to your supervisor." (Plaintiffs' Exhibit 13, letter regarding call-in procedures to Bryan Banks ("Banks Call-In Letter"), at page 1; Plaintiffs' Exhibit 4, Cornelsen Dep., at 81:14-83:5.)

70. The November 6, 2019, letter regarding call-in procedures given to Mr. Banks was intended as "information" or a "heads-up" rather than discipline, and it did not include the word "discipline." (Plaintiffs' Exhibit 13, Banks Call-In Letter, at page 1; Plaintiffs' Exhibit 4, Cornelsen Dep., at 84:4-18 and 88:10-22.)

71. On November 7, 2019, Sun Chemical issued Mr. Banks a Written Warning Notice for "Inappropriate behavior" with the following "Summary of Incident":

> On 10/24/2019, you reported an incident that you felt another employee, Ricardo Nevarez, was verbally and physically harassing you. Sun

> Chemical does not condone this type of behavior and, after investigating, has taken appropriate action.
>
> Our investigation also revealed that you used profanity against Ricardo. In the future you need to refrain from doing that. If an incident happens again, you should walk away and alert a supervisor.
>
> Verbal Profanity is considered inappropriate behavior that will not be tolerated. Should a similar occurrence happen, you will be subject to disciplinary action.

The Written Warning Notice identified the "Discipline" imposed as "Warning only" and was signed by Ms. Cornelsen. (Plaintiffs' Exhibit 6, Banks Written Warning Notice, at page 1.)

72. The November 7, 2019, Written Warning Notice issued to Mr. Banks was discipline, a first warning to highlight the infringement, which is part of the disciplinary process at Sun Chemical. (Plaintiffs' Exhibit 4, Cornelsen Dep., 78:15-79:6 and 88:23-89:1.)

73. It is not unusual for profanity to be used by employees and supervisors at Sun Chemical's Kansas City Facility, and no employee other than Mr. Banks has ever been written up for using profanity there. (Plaintiffs' Exhibit 9, excerpts from deposition of Larry Wilhite ("Wilhite Dep."), at 11:15-22; Plaintiffs' Exhibit 8, Stahl Dep., at 15:2-10 and 18:11-15; Plaintiffs' Exhibit 1, Banks Dep., at 59:1-17, 60:13-62:2, and 94:12-95:7; Plaintiffs' Exhibit 10, excerpts from deposition of Kristofer Savage ("Savage Dep."), at 16:4-18:24.)

74. Mr. Banks felt his dignity was taken when he was written up for using profanity while other employees, who have not complained to HR about racial

harassment, use profanity in the workplace and are not written up. (Plaintiffs'
Exhibit 1, Banks Dep., at 59:1-60:12.)

75.     After Mr. Banks complained to HR about racial harassment, Ms.
Cornelsen refused to communicate work directives to Mr. Banks directly, as she had
previously done, and instead told other people to tell Mr. Banks what to do. (Plaintiffs'
Exhibit 1, Banks Dep., at 73:25-74:12 and 76:5-17.)

76.     After Mr. Banks was written up for "us[ing] profanity against [Mr.
Nevarez]," he continued to have complaints relating to Mr. Nevarez, including that
Mr. Nevarez told a vendor that Mr. Banks was trying to get Mr. Nevarez fired, and
that Mr. Nevarez referred to Mr. Banks as "negro," which is Spanish for "black."
(Plaintiffs' Exhibit 1, Banks Dep., at 54:2-55:25.)

### III. PLAINTIFFS' ARGUMENT OPPOSING SUMMARY JUDGMENT

#### A. Introduction

Plaintiffs brought two claims against Sun Chemical: racial harassment and retaliation. The racial harassment claim stems from an egregious and violent racial assault. The incident was so severe that one bystander described "never witness[ing] something so intense." (Plaintiffs' Statement of Additional Material Facts ("SAMF") 50.) It was also preventable. Plaintiffs' retaliation claim arises from the company's punishment of Mr. Banks for coming forward by disciplining him for using profanity during the incident—the first and only discipline of its kind.

#### B. Standard of Review

Summary judgment "is appropriate when the evidence viewed in the light most favorable to the nonmoving party, demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Hanger v. Lake Cnty.*, 390 F.3d 579, 582 (8th Cir. 2004). In deciding summary judgment, courts must not weigh evidence to resolve factual disputes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."); *Teegarden v. Gold Crown Mgmt., LLC*, No. 4:18-CV-00554-SRB, 2020 WL 13682809, at *6 (W.D. Mo. Apr. 23, 2020) ("It is not this Court's task, at [the motion for summary judgment] stage, to weigh conflicting evidence or make credibility determinations; those are tasks that belong to a jury."). The Court "must draw all reasonable inferences in favor" of the Plaintiffs and may only credit Sun Chemical's supporting evidence "that is uncontradicted and

Case 4:23-cv-00694-RK     Document 55     Filed 08/09/24     Page 42 of 55

unimpeached," and even then, only "to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

### C. Sun Chemical is liable for the racially hostile work environment created by Mr. Nevarez's assault on Mr. Banks because it was negligent.

An employer violates Title VII and is liable for racial harassment where the plaintiff shows: (1) the victim belonged to a protected group; (2) the harassment was unwelcome; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment, *i.e.* it was subjectively offensive and "severe or pervasive enough to create an objectively hostile or abusive work environment;" and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. *Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886, 892-93 (8th Cir. 2005); *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (citing *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 801 (8th Cir. 2009)); *see* Eighth Circuit Manual of Model Civil Jury Instructions § 8.42 (2023).

In its Motion for Summary Judgment, Sun Chemical only addresses the fourth and fifth elements. Indeed, there could be no meaningful dispute regarding the first three elements: Mr. Banks, the victim of harassment in this case, is African American and thus a member of a protected group, and Mr. Nevarez's violent racial harassment was both unwelcome and based on race. (SUMF 11; SAMF 40-50.) Regarding the fourth element, Sun Chemical argues that "the conduct in question was not severe and [sic] pervasive." (Defendant's Suggestions, Doc. 52, at page 15.) (Defendant misstates the applicable standard, which is "severe *or* pervasive," not "severe *and*

pervasive." *See, e.g., Singletary*, 423 F.3d at 892-93.) As for the fifth element, Sun Chemical appears to deny it knew or should have known of Mr. Nevarez racially harassing behavior prior to the incident involving Mr. Banks, and it argues it took proper remedial actions after the incident. (Defendant's Suggestions, Doc. 52, at page 16-18.) Notably, Sun Chemical does not deny it did nothing to stop Mr. Nevarez's racial name-calling before he racially harassed Mr. Banks in October 2019.

### 1. Mr. Nevarez's attack on Mr. Banks was severe and created an objectively and subjectively hostile or abusive work environment.

When harassing conduct is severe, Title VII prohibits even one incident. *See Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) (plaintiff can establish a hostile work environment through evidence of a single incident of harassment that is "extraordinarily severe"); *EEOC v. WC&M Enters.*, 493 F.3d 393, 400 (5th Cir. 2007) ("Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment."); *Mastio v. Wausau Serv. Corp.*, 948 F. Supp. 1396, 1410 (E.D. Mo. 1996) ("While a single, isolated incident of sexual harassment generally is not sufficient to state a claim of hostile work environment sexual harassment, certain severe isolated incidents of harassment have been found to support such a claim.") (citations omitted); *see also Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002) (stating that severity and pervasiveness are, "to a certain degree, inversely related; a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute") (citation omitted).

Moreover, severity cannot be decided as a matter of law when facts are disputed as they are here. *See Patterson v. County of Oneida*, 375 F.3d 206, 227 (2nd Cir. 2004) ("Where reasonable jurors could disagree as to whether alleged incidents of racial insensitivity or harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law.") The "reasonable person" component of a harassment claim requires consideration of all the circumstances, including the severity of the harassment and "whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 540 (8th Cir. 2014). But "the 'harassment need not be so extreme that it produces tangible effects on job performance or psychological well-being to be actionable.'" *Bowen v. Missouri Dep't of Soc. Servs.*, 311 F.3d 878, 885 (8th Cir. 2002) (citations omitted).

Here, Mr. Nevarez's violent racial harassment of Mr. Banks was severe enough to create an objectively hostile or abusive work environment. In the words of a coworker present for the event: "I have never witnessed something so intense." (SAMF 50.) Mr. Nevarez "went straight up to [Mr. Banks] with his chest puffed out and his face red" and said, "Stop saying my F'g name, it is none of your F'g business you MF." He then threatened Mr. Banks, telling him he would "mess him up." (SAMF 43.) One witness described the lunchroom portion of the incident as "really intense" and another said, "it was getting so intense that I walked out to go to the locker room."

(SAMF 49.) Mr. Nevarez followed Mr. Banks into the locker room, continuing to call him a "stupid motherfucker" as he paced back and forth next to Mr. Banks. (SAMF 45.) As Mr. Banks bent over in front of his locker, Mr. Nevarez punched the locker next to Mr. Banks's head and called him a "fucking nigger." (SAMF 46.) Mr. Banks was shaken and walked away, heading out of the locker room. (SAMF 47.) Mr. Nevarez followed Mr. Banks to the locker room door, screaming "fucking nigger" at him three more times. (SAMF 48.) This "extraordinarily severe" racial harassment impacted not just Mr. Banks, but also his coworkers who witnessed it. A reasonable jury could conclude this constituted an abusive or hostile work environment, both objectively and subjectively.

### 2. Sun Chemical knew or should have known of Mr. Nevarez's racially harassing behavior prior to the incident involving Mr. Banks.

A company is considered to have actual knowledge of harassing conduct when sufficient information comes "to the attention of someone who [had] the power to terminate the harassment." *Nichols v. Tri-Nat'l Logistics, Inc.*, 809 F.3d 981, 986 (8th Cir. 2016) (citing *Sandoval*, 578 F.3d 787 at 802). "The promptness and adequacy of an employer's response will often be a question of fact for the factfinder to resolve." *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999). This is particularly true "where an employer has a mixed record with regard to handling the harassment." *Kpou v. Supervalu, Inc.*, 556 F. Supp. 3d 940, 962 (D. Minn. 2021) (citing *Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906, 910 (8th Cir. 2003)) (finding a genuine issue of material fact where the employer responded adequately to most, but not all, of the incidents it was aware of); *see also Watson v. CEVA Logistics U.S., Inc.*, 619

F.3d 936, 944-45 (8th Cir. 2010) ("Although the company did respond to some instances of harassment, including painting over bathroom graffiti, painting over the 'hang a n****r today' sign on the railcar, and firing [the harasser], a reasonable fact finder could conclude that supervisors at other times acquiesced in discriminatory behavior or were at least indifferent to complaints.").

Here, Sun Chemical knew or should have known of Mr. Nevarez's racially harassing behavior in time to correct it and prevent his violent and racist harassment of Mr. Banks. Before the company ever hired Mr. Banks, the Kansas City facility's only other Black employee reported that Mr. Nevarez had been calling him the "N" word, and it was creating a hostile work environment. (SAMF 66.) Specifically, Mr. Nevarez called Mr. Smallwood names in Spanish. A coworker, Mr. Calderon, told Mr. Smallwood that Mr. Nevarez was calling Mr. Smallwood the "N" word. (SAMF 65.) Mr. Calderon later confirmed to Ms. Warren, during her investigation of the incident involving Mr. Banks, Mr. Nevarez called Mr. Smallwood a "Nigger" before. (SAMF 61.) Given Mr. Nevarez's reports to the plant manager, a reasonable jury could conclude Sun Chemical knew or should have known of Mr. Nevarez's racially harassing behavior before the incident involving Mr. Banks but chose to do nothing. While it is true Ms. Cornelsen now denies receiving Mr. Smallwood's complaints, a jury should decide who to believe.

### D. When Mr. Banks complained about Mr. Nevarez's harassment, Sun Chemical retaliated against him.

Under Title VII, it is unlawful "for an employer to discriminate against [an employee] … because he has opposed any practice made … unlawful" by the statute.

42 U.S.C. § 2000e-3(a). While courts have long held that a discriminatory action is one that is "adverse", the Eighth Circuit recently instructed that courts must analyze whether a retaliatory action is "adverse" in light of *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024). *Collins v. Union Pacific Railroad Co.*, No. 23-2711, 2024 WL 3515859, \*6 (8th Cir. July 24, 2024) (remanding discrimination and retaliation claim because "the district court's analysis hinged on our case law employing the now-proscribed 'materially significant disadvantage' language" regarding the adverse action); *see also Cole v. Grp. Health Plan, Inc.*, No. 23-3050, 2024 WL 3217580, at \*2 (8th Cir. June 28, 2024) ("[i]n clarifying the requirements of a Title VII discrimination claim, '[t]he Supreme Court recently obviated the requirement—replete in our case law—that the [adverse employment action] be 'significant,' 'material,' or 'serious.'"). Under *Muldrow*, a discriminatory injury need not "satisf[y] a significance test." 144 S. Ct. at 972. But it is well-established that a retaliatory adverse action is one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). And, of course, the statute requires that the retaliatory action be taken "because" the employee "opposed" discrimination.

Here, Sun Chemical concedes – as it must – that Mr. Banks engaged in protected opposition to discrimination when he reported Mr. Nevarez's harassment to Ms. Cornelsen on October 24, 2019. (SAMF 51.) Sun Chemical only challenges the Plaintiffs' claim that the company took an adverse action against Mr. Banks and that

such adverse action was because of Mr. Banks's complaint of discrimination. Both of these arguments fail.

> **1. The disciplinary action Sun Chemical issued to Mr. Banks was an adverse employment action.**

Soon after Mr. Nevarez's assault, Mr. Banks reported to Sue Cornelsen the details of the attack. (SAMF 51.) Ms. Cornelsen reported the incident to an HR manager, who initiated an investigation. (SAMF 52-53.) As a direct result of Sun Chemical's investigation into Mr. Banks's complaint about Mr. Nevarez's racial harassment, the company disciplined Mr. Banks. Specifically, Sun Chemical gave Mr. Banks a Written Warning Notice citing him for the "Inappropriate behavior" of "us[ing] profanity against Ricardo [Nevarez]." (SAMF 71.) The Written Warning Notice identified the "Discipline" imposed as "Warning only" and was signed by the Plant Manager, Sue Cornelsen. (SAMF 71.) Asking for an inference in its favor, Sun Chemical now argues the warning "was not really discipline . . . just a verbal warning coaching [Mr. Banks.]" (Defendant's Suggestions, Doc. 52, at page 8; SUMF 19 and Plaintiffs' Response to SUMF 19.) But Ms. Cornelsen explained that the Written Warning Notice issued to Mr. Banks was discipline, a first warning to highlight the infringement, which is part of the disciplinary process at Sun Chemical. (SAMF 72.)

Such a write-up for "us[ing] profanity" at Sun Chemical's Kansas City Facility was unprecedented and materially adverse. It is not unusual for profanity to be used by employees and supervisors at the Kansas City Facility, and Mr. Banks is the only employee ever written up for using profanity there. (SAMF 73.) Mr. Banks felt his dignity was taken when he was written up for using profanity while other employees,

who have not complained to HR about racial harassment, use profanity in the workplace and are not written up. (SAMF 74.) A reasonable person could see the unprecedented nature of such a write-up and take it as a warning not to complain about racial harassment.

Sun Chemical's attempt to minimize the significance of the Written Warning Notice by characterizing it as "just a verbal warning coaching [Mr. Banks]" is further contradicted by a different warning he received just the day before. On November 6, 2019, after Mr. Banks "left a message on the general voicemail stating that [he] would not be in that day[,]" Ms. Cornelsen gave Mr. Banks a letter reminding him that "[w]e have requested that these call-ins be made to your supervisor." (SAMF 69.) The November 6, 2019, letter regarding call-in procedures given to Mr. Banks did not include the word "discipline," and Ms. Cornelsen explained it was intended as "information" or a "heads-up" rather than discipline. (SAMF 70.) This demonstrates Sun Chemical had a more informal method of "coaching" Mr. Banks available to it, even in writing, that did not involve the disciplinary process. But Sun Chemical instead chose to formally discipline Mr. Banks for "profanity." A jury could reasonably infer that employees at the Kansas City Facility would understand the difference between an information letter and a formal disciplinary write-up, and that the latter is materially adverse and likely to dissuade reasonable workers from complaining about racial harassment.

## 2. The disciplinary action Sun Chemical issued to Mr. Banks was because he reported racial harassment.

Had Mr. Banks never reported harassment Sun Chemical would never have disciplined him. The causal relationship between the two is obvious. But were there any doubt, the relationship is also apparent from the close temporal proximity between the harassment and discipline. And while Sun Chemical claims Mr. Banks's behavior caused the discipline, its explanation is pretextual: the company offers shifting and contradicted accounts of why it disciplined Mr. Banks. Mr. Banks is also the first and only person Sun Chemical ever disciplined for profanity despite its widespread use at his facility.

Regarding timing, the Eighth Circuit has held that two weeks between the protected activity and the adverse employment action is sufficient to establish a *prima facie* case. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002). Here, Mr. Banks's protected activity, his complaint about racial harassment, was on October 24, 2019, and the Written Warning Notice for "profanity" was on November 7, exactly two weeks later. This shifts the burden to Sun Chemical to explain whether it had a legitimate, nondiscriminatory reason for disciplining Mr. Banks.

Sun Chemical asserts that "Mr. Banks's aggressive and threatening conduct" was its "legitimate, nondiscriminatory reason" for "counseling" Mr. Banks. (Defendant's Suggestions, Doc. 52, at page 11.) More specifically, Sun Chemical now claims it "was not merely concerned with the use of profanity; rather, the Company was concerned that Mr. Banks failed to walk away and seek intervention from management, and instead escalated the incident with Mr. Nevarez with aggressive

and threatening conduct that included the use of profanity directed toward Mr. Nevarez." (Defendant's Suggestions, Doc. 52, at page 10.)

Sun Chemical's explanation is pretextual. The Written Warning Notice itself says nothing about Mr. Banks "escalat[ing] the incident" or engaging in "threatening conduct." (SAMF 71.) It addresses profanity. And all the witnesses present for October 24 incident, *including Mr. Nevarez*, told Ms. Warren that Mr. Nevarez started the heated exchange, not Mr. Banks. (SAMF 54.) The witnesses also confirmed that Mr. Banks *did* walk away from Mr. Nevarez. Twice. (SAMF 44 and 47.) Sun Chemical goes on to claim that "Ms. Warren also learned from her investigation that Mr. Banks acted aggressively toward Mr. Nevarez during this incident and may have threatened him" (SUMF 18); but this "fact" is controverted because *none* of the witnesses told Ms. Warren that Mr. Banks threatened Mr. Nevarez (Plaintiffs' Response to SUMF 18).

Sun Chemical's assertion that it disciplined Mr. Banks because he "failed to walk away" is also disputed. Ms. Warren herself concluded, as a result of her investigation, that Mr. Banks walked away from Mr. Nevarez in lunchroom to go into the locker room. (SAMF 63.) Furthermore, the company had previously praised an employee for behaving with less restraint than Mr. Banks. On approximately May 24, 2017, there was an incident at the Kansas City Facility involving an argument between Mr. Smallwood and Mr. Nevarez. Ms. Cornelsen heard the argument in the plant all the way from her office and went to address it. She physically got between them, settled them down, and counseled each of them on yelling and screaming and

threatening. (SAMF 67.) She did not issue either one a Written Warning Notice. (SAMF 68.) Instead, Ms. Cornelsen issued Mr. Nevarez an "Acknowledgement", telling him: "You responded correctly and removed yourself from the area to insure [sic] the altercation did not escalate. . . . You responded to the altercation correctly and were not the aggressor." Mr. Smallwood, the only Black employee at the time, did not receive a similar "Acknowledgement." (SAMF 68.) So, while Ms. Cornelsen admits she physically broke up the argument between Mr. Smallwood and Mr. Nevarez, meaning neither individual walked away or de-escalated, she nevertheless congratulated Mr. Nevarez—and not Mr. Smallwood—for walking away and not escalating. Like Mr. Smallwood, Mr. Banks similarly received no thanks for trying to end Mr. Nevarez's confrontation.

Finally, causation and pretext should be clear because Mr. Banks was the only employee Sun Chemical ever disciplined for profanity. (SAMF 73.) If Sun Chemical was truly interested in curbing bad language, it had other opportunities to do so. Instead, the only time the company was concerned enough to issue discipline was in response to Mr. Banks's protected complaint.

In short, Sun Chemical's reason for issuing the Written Warning Notice to Mr. Banks is a material fact that is very much in dispute, but there is ample evidence from which a reasonable jury could find Sun Chemical's explanation to be pretextual.

### E. Conclusion

Sun Chemical seeks summary judgment on disputed facts, asks for inferences in its favor, and minimizes the severity of a violent and racist assault. It also asks the Court to ignore the company's response to Mr. Banks's report and find that

discipline issued as a direct consequence of a protected complaint was legitimate. On this record, a jury should resolve any dispute and the Court should deny Sun Chemical's motion.

Respectfully submitted, jointly, by:

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

*/s/ Luke R. Hertenstein*
Luke R. Hertenstein, WDMo Bar # 59890
Kansas City Area Office
400 State Ave., Ste. 905
Kansas City, KS 66101
Phone: (913) 359-1812
Email: luke.hertenstein@eeoc.gov

Meredith S. Berwick, Mo. Bar # 64389
St. Louis District Office
1222 Spruce Street, Rm 8.100
St. Louis, MO 63103
Phone: (314) 798-1909
Email: meredith.berwick@eeoc.gov

*Attorneys for Plaintiff EEOC*

and

THORNBERRY BROWN, LLC

Randall W. Brown, Mo. Bar # 43805
*Randy@ThornberryBrown.com*
Stephen C. Thornberry, Mo. Bar # 44354
*Steve@ThornberryBrown.com*
4550 Main Street, Suite 205
Kansas City, Missouri 64111
(816) 532-8383 telephone
(816) 531-8385 facsimile

*Attorneys for Intervenor-Plaintiff*

## Certificate of Service

I certify that on August 9, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record for all parties.

*/s/ Luke R. Hertenstein*
Luke R. Hertenstein, WDMo Bar # 59890