IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| BRYAN BANKS, | ) ) | |
| Intervenor-Plaintiff, | ) ) | Case No. 4:23-cv-00694-RK |
| v. | ) ) | |
| SUN CHEMICAL CORPORATION, | ) ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Equal Employment Opportunity Commission ("EEOC") and Intervenor-Plaintiff Bryan Banks bring this case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against Banks's employer, Defendant Sun Chemical Corporation. Before the Court is Sun Chemical's motion for summary judgment. (Doc. 51.) The motion is fully briefed. (Docs. 52, 55, 59.) After careful consideration and for the reasons stated below, the motion is **GRANTED in part** and **DENIED in part**.

### Background[1]

The primary complaint in this lawsuit involves a confrontation between Banks and coworker Ricardo Nevarez in which Nevarez called Banks the "n-word."[2] Banks is an African American male and Nevarez is a Hispanic male. (Doc. 55 at ¶ 11.)

In the summer of 2019, Banks began working at Sun Chemical as a temporary production technician through a staffing company. (Doc. 55 at ¶ 6.) On October 21, 2019, he was hired in the same position as a full-time employee. (*Id.*)

---

[1] The facts are taken from the parties' statements of uncontroverted material facts and are drawn in the light most favorable to Plaintiffs. (Docs. 52, 55, 59.)

[2] The Court censors the epithet where appropriate; however, the Court notes that Banks claims Nevarez used the epithet in its full state.

On the morning of October 24, 2019, before the start of his shift, Banks was in the lunchroom with three of his coworkers, Larry Wilhite, Joe Stahl, and Joe Van Dolah. (Doc. 59 at ¶ 40.) Stahl asked where Nevarez was, and Banks replied that he was not sure. (*Id.* at ¶ 41.) According to post-incident interview notes taken by Antonella Warren, Human Resources Representative, Nevarez told Warren that he heard Banks talking about him, and Nevarez entered the lunchroom to confront Banks. (*Id.* at ¶ 42.) Nevarez approached Banks in the lunchroom and started a verbal confrontation with him. (*Id.* at ¶¶ 43-44.) Both men used profanity during the confrontation. (*Id.*; Doc. 52-1 at 57.) Eventually, Banks walked away from Nevarez and into the locker room to change for his shift. (Doc. 59 at ¶¶ 44-45.) Nevarez also entered the locker room, where he continued yelling and swearing. (*Id.* at ¶ 45.) While Banks had his locker open, Nevarez punched the locker adjacent to Banks's locker and next to where Banks was standing. (*Id.*) According to Banks and Van Dolah (who was present in the locker room), Nevarez called Banks a "fucking n****r." (*Id.* at ¶ 46.) Banks testified that he walked away from Nevarez again, this time to exit the locker room, which is when Nevarez screamed "fucking n****r" three times. (Docs. 59 at ¶ 48, 55-1 at 47.)

The same day, Banks reported the incident to Sue Cornelsen, Plant Manager. (Doc. 55 at ¶¶ 6, 10.) Several other employees also notified Cornelsen about the confrontation. (Doc. 52-2 at 55.) Cornelsen observed a dent in the locker Nevarez punched. (Doc. 59 at ¶ 52.) Cornelsen notified Warren, who began an investigation that day. (Doc. 55 at ¶ 12.) Warren began by interviewing the five employees present for the incident: Banks, Nevarez, Wilhite, Stahl, and Van Dolah. (Doc. 59 at ¶ 53.) According to her interview notes, Wilhite, Stahl, and Van Dolah each reported that Banks also contributed to the confrontation. (*Id.* at ¶ 44 (Wilhite reported Banks "was being aggressive as well;" Stahl conveyed that both men were "up in each other's face, nose to nose;" and Van Dolah reported that the confrontation was "back and forth," intense, and that both men were swearing, including "a lot of FU's [sic].").)

Warren also interviewed Kristofer Savage, an employee who was not present for the confrontation, but who reported that he had heard Nevarez use the n-word before, but not directed at someone. (*Id.* at ¶ 60.) And, Warren interviewed Maurilio Calderon, who also was not present for the confrontation, but who stated that during a prior incident between Nevarez and Mike Smallwood (the only other African American employee at Sun Chemical at the time), Calderon

2

thought he heard Nevarez say the n-word, but Smallwood "was also being very rude" and both men "were spewing bad words at each other" during the incident. (*Id.* at ¶ 61.)

On November 7, 2019, Nevarez was issued a "Final Written Warning Notice" and received a five-day suspension without pay as a result of his actions on October 24, 2019.[3] (Docs. 55 at ¶-16, 52-5.) The "Action" line item provides: "First Warning: (Highlight Infringement), Second Warning: (Verbal), **Final Warning: (Formal Written)**." (Doc. 52-5 (emphasis in original).) The "Discipline" line item provides: "Discipline: **Five-day suspension without pay** . . . ." (*Id.* (emphasis in original).) A summary in the notice provides:

> On 10/24/2019, there was an incident reported in which your conduct was verbally and physically harassing against another employee. During this incident, you physically intimidated another employee, Bryan Banks, and you were using a lot of profanity toward him. Later, in the locker room, you used an inappropriate racial slur towards him that was witnessed by other employees.
>
> Your behavior is a direct violation of Company policy and the Code of Conduct. Sun Chemical expects all employees to conduct themselves in a professional and respectful manner towards other employees. Should a similar incident occur again, you will be subject to further discipline, up to and including immediate termination of employment.

(*Id.*)

Also on November 7, 2019, Banks received a "Written Warning Notice." (Docs. 59 at ¶-71, 52-6.) The "Action" line item provides: "**First Warning**: (Highlight Infringement), Second Warning: (Verbal), Final Warning: (Formal Written)" and the "Discipline" line item provides: "Discipline: **Warning only**." (Doc. 52-6 (emphasis in original).) A summary in the notice provides:

> On 10/24/2019, you reported an incident that you felt another employee, Ricardo Nevarez, was verbally and physically harassing toward you. Sun Chemical does not condone this type of behavior and, after investigating, has taken appropriate action.
>
> Our investigation also revealed that you used profanity against [Nevarez]. In the future, you need to refrain from doing that. If an incident happens again, you should walk away and alert a supervisor.

---

[3] Nevarez then experienced significant health issues, was on a leave of absence, and has since passed away. (Doc. 55 at ¶ 17.)

3

> Verbal profanity is considered inappropriate behavior that will not be tolerated. Should a similar occurrence happen, you will be subject to disciplinary action.

(*Id.*) According to Sun Chemical, Banks's Written Warning Notice was only a warning, and it did not consider it to be a disciplinary action. (Doc. 55 at ¶ 21.)

Banks filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race and color discrimination and retaliation. (Doc. 52-9.) Banks described the October 24, 2019, confrontation and alleged that Nevarez had exhibited "previous behavior of doing the same thing" and because Nevarez "has continued to harass African American employees, [Banks] reported the harassment to HR." (*Id.*) Banks stated he was "written up" in retaliation, and that "non-African American employees have cussed and were not written up." (*Id.*)

The EEOC brings suit alleging Sun Chemical knew or should have known of the alleged racially hostile work environment created by Nevarez, and then Sun Chemical disciplined Banks in retaliation because of his harassment complaint. (Doc. 1.) Banks joined the lawsuit as Plaintiff-Intervenor. Sun Chemical moves for summary judgment on both claims.

## Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence "in the light most favorable to the nonmoving party and gives the nonmoving party the benefit of all reasonable inferences." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (cleaned up). In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

## Discussion

Sun Chemical argues it is entitled to summary judgment on each of Plaintiffs' claims. With respect to Plaintiffs' hostile work environment claim, Sun Chemical argues Plaintiffs have failed to set forth facts which establish Nevarez's conduct was severe or pervasive; moreover, the undisputed facts show that Sun Chemical took proper remedial action. Sun Chemical also asserts Plaintiffs' retaliation claim fails as a matter of law because Banks did not suffer a materially adverse employment action and cannot establish that his Written Warning Notice was pretextual. The Court addresses these arguments in turn.

4

## I. Hostile Work Environment

To establish their hostile work environment claim, Plaintiffs must show that: (1) Banks "belonged to a protected group, (2) he was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment affected a term, condition, or privilege of employment," and (5) "where, as here, the harassment was perpetrated by a nonsupervisory employee, the employer knew or should have known of the harassment and failed to take proper remedial action." *Carter v. Atrium Hospitality*, 997 F.3d 803, 811 (8th Cir. 2021) (cleaned up).

Sun Chemical disputes only the fourth and fifth elements. As to the fourth element, which asks whether the harassment affected a term, condition, or privilege of Banks's employment, the "workplace must be 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive.'" *Anderson v. Durham D & M, LLC*, 606 F.3d 513, 519 (8th Cir. 2010) (quoting *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005)). "The environment must be both objectively hostile as perceived by a reasonable person and subjectively abusive as actually viewed by" Banks. *Id.* (citation omitted).

The "severe or pervasive" inquiry requires a consideration of the totality of the circumstances, "including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, whether the conduct unreasonably interfered with the employee's work performance," the "physical proximity to the harasser, and the presence or absence of other people." *Anderson*, 606 F.3d at 518-19 (cleaned up). "No single factor is required," and the nature of the analysis mandates that it cannot be "a mathematically precise test." *Harris v. Forklift Sys.*, 510 U.S. 17, 22-23 (1993).

"Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936, 942-43 (8th Cir. 2010) (quoting *Arraleh v. County of Ramsey,* 461 F.3d 967, 979 (8th Cir. 2006)). And, the "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to support a claim of hostile work environment." *Id.* (cleaned up).

Sun Chemical argues the complained-of conduct was not objectively severe or pervasive because "it is based on a single isolated incident in October 2019 for which witness accounts differ as to whether a racial epithet was used or not." (Doc. 52 at 20.) The Court rejects Sun Chemical's contention that evidence Nevarez used the n-word is "conflicting"—the only employees who

5

denied hearing Nevarez say the n-word were not present in the locker room. (*See* Docs. 52-3, 52-4 at 19.) In the alternative, Sun Chemical asserts that even if Nevarez did use the n-word, the use of a racial slur, without more, is insufficient to render a work environment as hostile as a matter of law. (Doc. 52 at 20.)

While Sun Chemical argues that the confrontation fails to satisfy the fourth element exclusively because it was a single interaction, there is no "rule of law holding that a single incident can never be sufficiently severe" to create a hostile work environment. *Willis v. Henderson*, 262 F.3d 801, 809 n.4 (8th Cir. 2001) (quoting *Moring v. Arkansas Dep't of Corr.*, 243 F.3d 452, 456 (8th Cir. 2001)); *Watson*, 619 F.3d at 942 ("We have repeatedly emphasized, however, that frequency is not the only factor we examine . . . in situations where we have found the existence of a hostile work environment.").

However, there was "more" to Nevarez's conduct than the "mere utterance of an epithet," including Nevarez's reportedly threatening nature and charged language used during the confrontation. "It is well established that all instances of harassment need not be stamped with signs of overt discrimination . . . if they are part of a course of conduct which is tied to evidence of discriminatory animus." *Watson*, 619 F.3d at 944 (cleaned up); *see Delph v. Dr. Pepper Bottling Co.*, 130 F.3d 349, 356 (8th Cir. 1997) ("Plaintiff was called some of the most offensive of racist epithets. The use of the word [n****r] even in jest could be evidence of racial antipathy." (cleaned up)). Nevarez initiated the confrontation. According to Warren's investigation notes, Van Dolah indicated that Nevarez "went straight up to [Banks] with his chest puffed out and his face red" and Stahl stated Nevarez "was definitely trying to be intimidating," he "got up in [Banks'] face," and at one point said "he would mess [Banks] up." (Doc. 52-3.) These two employees also reported that Nevarez called Banks a "mother fucker." (*Id.*) Eventually, Banks walked away from Nevarez and into the locker room. (Doc. 59 at ¶ 44.) Nevarez followed Banks into the locker room, where Nevarez continued cursing at Banks, calling him a "stupid motherfucker." (*Id.* at ¶ 45.) While Banks had his locker open, Nevarez punched the locker adjacent to Banks's locker and next to where Banks was standing. (*Id.*) Banks walked away from Nevarez, exiting the locker room, which is when Nevarez screamed "fucking n****r" three times. (Docs. 59 at ¶ 48, 55-1 at 47.) Warren's investigation notes indicate that Van Dolah confirms he heard Nevarez use the n-word. (Doc. 59 at ¶ 48.)

6

Moreover, what Banks reported to Sun Chemical, and Sun Chemical's reaction thereto, is controverted—a fact which may be material to the analysis in this instance. *Cf. Naambwe v. Smithfield Foods, Inc.*, No. CIV 17-4123, 2018 WL 4853910, at *6 (D.S.D. Oct. 5, 2018) (dismissive conduct by supervisor when plaintiffs reported racial slurs and threatening behavior added to the abusiveness of the environment). It is uncontroverted that Banks reported the incident to Cornelsen shortly after it occurred. (Doc. 59 at ¶ 51.) According to Banks, he told Cornelsen that Nevarez called him a "fucking n****r" and Cornelsen excused Nevarez's conduct, stating, "Oh, he had a bad night." (*Id.*) During Cornelsen's deposition, she testified that Banks reported Nevarez followed him into the locker room and hit a locker. (*Id.*) But, she specifically denied that Banks reported Nevarez used the n-word and stated Banks "only said he felt threatened." (*Id.*) Cornelsen also denied excusing Nevarez's behavior. (*Id.*)

"This is not a situation where racial jokes and innuendo were merely bandied about the workplace with no particular target, or where [Plaintiff] was called names behind his back but was unaware of it." *Delph*, 130 F.3d at 356. The racial epithets were directed at Banks and were made in his presence. Many of the cases analyzed by the Eighth Circuit which have considered isolated incidents of racial epithets in the hostile work environment context have placed an emphasis on whether the slurs were directed at the plaintiff and the presence of threats of physical violence. *See id.*; *Watson*, 619 F.3d at 943 ("Regardless of the frequency of the slurs and comments, other considerations lend weight to their severity in this case," including that the n-word was directed at plaintiffs, and made in their presence and in front of others at work such "that a jury could reasonably conclude would be particularly demeaning or humiliating to the plaintiffs."); *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 760 (8th Cir. 2004) (racial slurs did not render work environment hostile where they were sporadic and made in presence of plaintiff but not directed at him); *Singletary*, 423 F.3d at 893 (racial slurs were infrequent and not directed at the plaintiff and therefore were not actionable); *Jackson v. Flint Ink N. Am. Corp.*, 382 F.3d 869, 869 (8th Cir. 2004) (use of racial slurs and appearance of racially derogatory graffiti were not originally actionable, but reversing grant of summary judgment on rehearing wherein plaintiff highlighted that graffiti was physically threatening to him); *Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903, 912 (8th Cir. 2006) ("[Harasser] facilitated an atmosphere of intimidation [with vague, physically threatening comments] that accentuated the effect of his racial slurs directed at [the plaintiff]."). The record contains evidence from which a reasonable jury could find Nevarez

7

directed racial epithets at Banks and could view as physically threatening or intimidating, and therefore, both of these factors are present.

Taken collectively, Plaintiffs have shown enough to avoid summary judgment. A jury could reasonably conclude that the complained-of conduct was sufficiently severe or pervasive to alter the condition of Plaintiff's employment.[4]

Turning to the fifth element, which requires Plaintiffs prove that Sun Chemical knew or should have known of the harassment and failed to take proper remedial action, the Court finds that the record is plainly controverted as to a material fact, further precluding summary judgment. Plaintiffs argue that Sun Chemical was aware of Nevarez's "racially harassing behavior in time to correct it and prevent his violent and racist harassment of Mr. Banks." (Doc. 55 at 47.) When Warren interviewed Banks following the October 2019 confrontation, Banks told her that Smallwood told him Nevarez had called him the n-word in the past. (Doc. 52-3.) All of the employees interviewed indicated there were issues between Nevarez and Smallwood. (*Id.*) Calderon reported that he witnessed a previous argument between Nevarez and Smallwood wherein both were cursing at each other, and he thought Nevarez called Smallwood the n-word. (*Id.*) Plaintiffs cite deposition transcript of Smallwood, the only other African American employee, wherein he testified that Nevarez treated him unfairly and called him names, including the "n-word." (Doc. 55 at ¶ 65.) Smallwood testified that he complained about this treatment to Cornelsen, specifically reporting to her that Nevarez used the n-word, he was "prejudiced," and his behavior was creating a "hostile work environment." (*Id.* at ¶ 66, Doc. 55-3 at 46.) Cornelsen denies ever receiving any complaints about Nevarez's (or any other employee's) use of the n-word. (Doc. 59-2 at ¶¶ 8-11.) Based on this record, summary judgment is not proper.

For these reasons, the Court finds that Plaintiffs have produced sufficient evidence to defeat summary judgment on their hostile work environment claim. Sun Chemical's motion for summary judgment as to Count One is **DENIED**.

---

[4] In Sun Chemical's reply brief, it argues for the first time that Plaintiffs have not established that Banks subjectively viewed the harassment as severe or pervasive. The Court notes that Sun Chemical's contention is apparently belied by Banks's deposition testimony as well as other evidence in the record. However, the Court will not consider arguments raised for the first time in a reply brief. *See* Fed. R. Civ. P. 7(b) (stating that a request for relief, and the particular grounds supporting the request, must be made in a motion); *see also John & Dave, LLC v. Soc'y Ins.*, 998 F. Supp. 2d 783, 794 (W.D. Iowa 2014).

## II. Retaliation

To establish their retaliation claim, Plaintiffs must show that Banks engaged in protected conduct, and he suffered a materially adverse employment action that was causally linked to the protected conduct. *Collins v. Kansas City Mo. Pub. Sch. Dist.*, 92 F.4th 770, 774 (8th Cir. 2024). Moreover, in the absence of direct evidence of retaliation in violation of Title VII, the Court applies the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Collins v. Union Pac. R.R.*, 108 F.4th 1049, 1053 (8th Cir. 2024) (applying the burden-shifting framework to retaliation claim). Under this framework, Plaintiffs have the initial burden to establish a prima facie case of retaliation. *Watson*, 996 F.3d at 854. If successful, Plaintiffs create "a rebuttable presumption of discrimination" and shift the burden to Sun Chemical to produce "a legitimate, nondiscriminatory reason for its decision." *Id.* (cleaned up). Such a showing by Sun Chemical causes the presumption to disappear and the burden returns to Plaintiffs to prove "that the proffered reason was pretext for discrimination." *Id.* (cleaned up).

Plaintiffs allege that Banks complained about the confrontation with Nevarez and as a result, he was disciplined. As to Plaintiffs' prima facie showing of retaliation, Sun Chemical challenges whether Banks' Written Warning Notice constituted an adverse employment action.[5] Sun Chemical argues that the Written Warning Notice was not considered discipline and instead Banks was merely "coached" and "counseled" concerning his behavior during the confrontation.

Plaintiffs assert the Written Warning Notice was a disciplinary action. And, they argue that it satisfies the test for an adverse employment action following the Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. 346, 350 (2024), because "a discriminatory injury need not 'satisf[y] a significance test.'" (Doc. 55 at 48.) The Court questions whether *Muldrow*'s revised standard applies in the retaliation context. *See* 601 U.S. at 348 (explaining that the anti-*retaliation* test set forth in *Burlington Northern and Santa Fe Railway Company v. White*, 548 U.S. 53, 68 (2000), was adopted "for reasons peculiar to the retaliation context," and importing the same standard to the anti-*discrimination* statute "would create a mismatch"). However, even assuming Plaintiffs have raised a genuine issue of material fact from which a jury could find Banks suffered an adverse employment action, the Court finds that Sun Chemical has put forth legitimate,

---

[5] Sun Chemical summarily states that "Plaintiffs cannot establish the required causal connection," but does not otherwise meaningfully contest the element. (Doc. 52 at 17.) The Court notes that in cases where the temporal proximity "is very close," a plaintiff can "rest on it exclusively" for purposes of establishing a prima facie case. *Tyler v. Univ. of Ark. Bd. of Tr.*, 628 F.3d 980, 986 (8th Cir. 2011).

9

nondiscriminatory reasons for issuing the Written Warning Notice and Plaintiffs have failed to show that those reasons were pretextual.[6]

Sun Chemical explains that it issued the Written Warning Notice to Banks because Warren's investigation revealed he exhibited concerning behavior (including profanity, and reportedly threatening and aggressive language) and Sun Chemical wished to counsel Banks on how he should have handled the situation, and at the same time how he should act in the future. (Doc. 59 at 30-31.)

Federal courts are not to act as "super-personnel departments with authority to review the wisdom or fairness of business judgments made by employers." *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1118 (8th Cir. 2018) (cleaned up). Thus, "the evidence must do more than raise doubts about the wisdom and fairness of the employer's opinions and actions—it must create a real issue as to the genuineness of the employer's perceptions and beliefs." *Id.* (cleaned up). "An employee can prove that [his] employer's articulated justification for an adverse employment action is pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011) (quoting *Jones v. Nat'l Am. Univ.*, 608 F.3d 1039, 1046 (8th Cir. 2010)). "Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action." *Id.* (cleaned up). "Creating a genuine issue of material fact regarding pretext requires more substantial evidence than it takes to make a prima facie case because unlike evidence establishing a prima facie case, evidence of pretext and retaliation is viewed in light of the employer's justification." *Hairston v. Wormuth*, 6 F.4th 834, 843 (8th Cir. 2021) (cleaned up).

Plaintiffs do not articulate under which method they bring their pretextual argument, but they begin by asserting that Sun Chemical has offered "shifting and contradicted accounts" of its decision to issue the Written Warning Notice. (Doc. 55 at 51.) "A change in an employer's legitimate, nondiscriminatory reason" for an adverse employment action may be probative of pretext, but "only if the discrepancy is 'substantial.'" *Bone v. G4S Youth Serv., LLC*, 686 F.3d 948, 957 (8th Cir. 2012) (citation omitted). Plaintiffs take issue with the wording of the summary in

---

[6] "If an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext." *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007) (cleaned up).

10

Banks's Written Warning Notice and Sun Chemical's proffered explanation in its suggestions in support of its motion for summary judgment. With respect to Banks's behavior during the confrontation, the summary provided:

> Our investigation also revealed that you used profanity against [Nevarez]. In the future, you need to refrain from doing that. If an incident happens again, you should walk away and alert a supervisor.
>
> Verbal profanity is considered inappropriate behavior that will not be tolerated. Should a similar occurrence happen, you will be subject to disciplinary action.

(Doc. 52-6.)

Warren's deposition testimony as to Sun Chemical's reasoning was consistent with the information provided in the Written Warning Notice. Warren explained: "During the course of the investigation, . . . [it was revealed] that Mr. Banks had been aggressive right back with Mr. Nevarez, even threatening to go out into the parking lot, mess him up. They were both getting in each other's face and puffing their chests and doing the whole nine yards. They were both swearing at each other." (Doc. 55-5 at 28-29.) However, as Warren explained, Banks only received a Written Warning Notice which Sun Chemical did not consider to be discipline: "It was just a verbal warning coaching him on making sure he understands that if an altercation of that kind were to happen again, the best course of action would not be to interact at all and to simply walk away and go to site management to report the incident." (*Id.* at 27.)

Plaintiffs essentially argue that Sun Chemical's initial reason for the Written Warning Notice was *only* Banks' use of profanity, but now on summary judgment Sun Chemical contends that it was also concerned with Banks' failure "to walk away and seek intervention from management, and instead escalated the incident with Mr. Nevarez with aggressive and threatening conduct that included the use of profanity directed toward Mr. Nevarez." (Doc. 55 at 51-52.) The Court fails to see any material change in the explanation as cited in the record. Sun Chemical's argument in its summary judgment motion does not contradict or change its original reasoning cited in the Written Warning Notice but instead more thoroughly explains the concerns it uncovered during the investigation.[7] Although not artfully explained in the Written Warning

---

[7] Plaintiffs also underscore that Banks did walk away from Nevarez during the confrontation and thus, according to Plaintiffs, Sun Chemical's explanation that he was issued the Written Warning Notice because he failed to walk away is pretextual. (Doc. 55 at 51-52.) However, Warren accounted for that fact in her explanation: "[Banks] first interacted with Mr. Nevarez and I guess basically in his words, stood up

11

Notice, Sun Chemical did indicate this premise: "If an incident happens again, you should walk away and alert a supervisor." (Doc. 52-6.) The fact that the Written Warning Notice only cited profane language (rather than aggressive and/or threatening language as cited by Warren) does not amount to a change, let alone a substantial change, in Sun Chemical's explanation.[8]

Plaintiffs also argue that "pretext should be clear because Mr. Banks was the only employee Sun Chemical ever disciplined for profanity." (Doc. 55 at 53.) That contention is not supported by the summary judgment record. Rather, the portions of the record cited by Plaintiffs establish that other workers at Sun Chemical had used profanity; however, the frequency was not established, nor was whether profanity was reported to supervisors or appropriate personnel. (*See* Doc. 55 at ¶ 73.) Only Stahl and Banks were asked whether they were aware of Sun Chemical disciplining other employees for using profanity, and they replied that they were unaware (in the case of Stahl) or had not seen that happen (in the case of Banks). (Docs. 55-8 at 18, 55-1 at 59-61.) Those "facts" do not establish several relevant precursors for relevancy to this situation: (1) that profanity was used toward a coworker in a confrontation as was the case with Banks and Nevarez, or similar charged environment, (2) that supervisors were aware of profanity use, or (3) most notably, that Stahl and Banks had knowledge of the entirety of their coworkers' discipline history.[9] In short, Plaintiffs' contention that Banks was the only employee Sun Chemical ever

---

to him, was yelling back at him, swearing at him as well, threatening him as well, and then he walked away." (Doc. 52-4 at 31.) The record supports Warren's finding that while Banks walked away from Nevarez, he did so after he engaged with Nevarez, using profanity and exhibiting behavior that witnesses described as aggressive before exiting to the locker room. (Doc. 52-3.)

[8] Even if the Court did find a change in Sun Chemical's reason for imposing the Written Warning Notice, Plaintiffs do not argue that the change is "substantial," and the Court does not find as such for the reasons stated above. Sun Chemical's non-discriminatory reasoning is premised on Banks's behavior during the confrontation which, in part, included the use of profanity. Any change, at all, is in the emphasis placed on the type of prohibitive language used by Banks (i.e., obscene, abusive, or threatening), and is certainly not substantial.

[9] The only example Banks provided was a situation where an employee called another coworker two obscene (but unrelated to race) names. (Doc. 55-1 at 60-62.) Banks claims that later, Patty Bledsoe (apparently a supervisory employee, but her title is not provided) said during a meeting, "[n]ext time something like this happens, we're going to write them up." (*Id.* at 61.) Banks said this occurred in October or November 2019, thus, either right before or right after his confrontation with Nevarez. (*Id.* at 61.) Aside from not supporting the statement that "*no* employee has *ever* been written up for using profanity," (Doc. 55 at ¶ 73), Plaintiffs do not address this situation in their opposition to summary judgment, it is not elsewhere mentioned, and Banks' deposition testimony lacks details for the Court to appropriately compare it to the Banks-Nevarez confrontation.

12

disciplined for profanity is beyond speculative and falls short of establishing a genuine issue of fact for trial.[10]

In conclusion, Plaintiffs have failed to produce any evidence which debunks Sun Chemical's asserted rationale for the Written Warning Notice. Violating workplace policies is a legitimate, non-discriminatory rationale for disciplining an employee. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006); *Lovelace v. Washington Univ. Sch. of Med.*, 931 F.3d 698, 707 (8th Cir. 2019) (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) ("Although contesting an unlawful employment practice is protected conduct, [Title VII] [does] not insulate an employee from discipline for violating the employer's rules or disrupting the workplace.")). While the actions taken against Banks were repulsive, it is undisputed that Banks' actions were also flawed. It was Sun Chemical's prerogative to correct his behavior.

For these reasons, Sun Chemical's motion for summary judgment on Count Two is **GRANTED**.

## Conclusion

After careful consideration and for the reasons explained above, the Court **ORDERS** that summary judgment is **DENIED** as to Plaintiffs' hostile work environment claim (Count One) and **GRANTED** as to Plaintiffs' retaliation claim (Count Two).

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: November 6, 2024

---

[10] It is unclear if Plaintiffs intended to assert that the other employees who purportedly used profanity but were not disciplined were members outside of a protected class and therefore, their preferred treatment points toward a race-based motivation in disciplining Banks. "A common way of proving pretext is to show that similarly situated employees were more favorably treated." *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 936 (8th Cir. 2006). However, that effort would fall short. "At the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1126 (8th Cir. 2017). Employees "used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* Plaintiffs have not asserted enough facts (e.g., the other employees' protected or non-protected statuses or circumstances of their policy violations) from which the Court could begin to analyze.